# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 04 2017, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT H.M.
Cara Schaefer Wieneke
Wieneke Law Office
Brooklyn, Indiana

ATTORNEY FOR APPELLANT T.S.
Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of Z.S. (Minor Child), | May 4, 2017 |
| | Court of Appeals Case No. 60A01-1607-JT-1552 |
| H.M. (Mother) and T.S. (Father), | |
| *Appellants-Respondents,* | Appeal from the Owen Circuit Court |
| v. | The Honorable Kelsey B. Hanlon, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 60C02-1512-JT-279 |
| *Appellee-Petitioner.* | |

**Mathias, Judge.**

[1] The Owen Circuit Court entered an order terminating the parental rights of H.M. ("Mother") and T.S. ("Father") to their minor child Z.S. Father appeals and argues that the trial court erred in concluding that the Indiana Department of Child Services ("DCS") met its burden of proving by clear and convincing evidence that termination of his parental rights was in the best interests of the child. Mother also appeals and argues that the trial court erred in concluding that DCS met its burden of showing that the conditions that led to the child being removed from her care would not be remedied and that continuation of the parent-child relationship posed a threat to the well-being of the child. Concluding that both parents' arguments are little more than a request that we reweigh the evidence, we affirm.

## Facts and Procedural History

[2] Mother and Father were in a romantic relationship for over a year. During this relationship, Mother became pregnant and, in April 2014, gave birth to a daughter, Z.S. At birth, Z.S. tested positive for amphetamine, methamphetamine, and THC.[1] Mother initially denied using drugs but then later admitted that both she and Father were addicted to methamphetamine. On April 8, 2014, DCS removed Z.S. from her parents' care and petitioned the

---

[1] THC is the abbreviated name for tetrahydrocannabinol, the main active chemical in marijuana. *Radick v. State*, 863 N.E.2d 356, 359 (Ind. Ct. App. 2007).

trial court to find that Z.S. was a child in need of services ("CHINS"). The trial court held a hearing on the CHINS petition on May 29, 2014, and issued an order finding Z.S. to be a CHINS on July 8, 2014. The court issued a dispositional order on October 7, 2014, and ordered both parents to engage in services to address their substance abuse issues, including addiction counseling, recovery coaching, and life-skills training. The trial court also ordered both parents to participate in a regimen of chemical testing to monitor their sobriety and to participate in visitation with their daughter.

[3] After the dispositional hearing, Father was initially compliant with the services offered, participated in drug testing, and was in contact with the assigned DCS family case manager ("FCM"). However, on October 2014, Father stopped participating in services, stopped submitting drug tests, and did not attend visitation with Z.S. Indeed, Father effectively dropped off the map for a year between October 2014 and October 2015, during which time the FCM was unable to contact Father. Then, in November 2015, Father attended a visit with Z.S. and began to communicate with the FCM. DCS then attempted to establish a drug testing schedule for Father. DCS also made another referral for Father to receive a substance abuse evaluation. Father failed to attend the scheduled evaluation. Over the course of the CHINS case, Father missed numerous scheduled drug tests and consistently tested positive for

methamphetamine when he did submit to testing.[2] Thus, Father wholly failed to address his methamphetamine addiction.

[4] Like Father, Mother was initially compliant. She underwent a substance abuse evaluation on April 9, 2014, and participated in the offered services up to the time of the dispositional hearing in July 2014. After the dispositional hearing, Mother missed two scheduled drug tests, but was negative on the twenty-six tests she did submit to. But thereafter, Mother's participation in drug testing became very inconsistent. From November 2014 through August 2015, she missed thirty-two drug tests. And the tests she did submit to were invariably positive for methamphetamine use.[3] Mother last contacted her service providers in June 2015, after which she made no further contact.

[5] Mother was also incarcerated at various times during the CHINS proceedings. As found by the trial court, Mother was in jail on a probation violation from June 26 to July 20, 2015. Later again that year, she was in jail on another probation violation from October 6 to October 14, 2015. Then, from April 1 to May 2, 2016, Mother was incarcerated in relation to a new criminal case.

[6] On December 1, 2015, DCS filed a petition to terminate Mother and Father's parental rights. The trial court held an evidentiary hearing on the petition on

---

[2] The trial court specifically found that Father tested positive for methamphetamine on April 6, 2014; April 8, 2014; April 11, 2014; April 16, 2014; April 21, 2014; April 23, 2014; April 25, 2014; April 30, 2014; June 16, 2014; October 16, 2014; April 1, 2016; and April 4, 2016.

[3] The trial court specifically found that Mother tested positive for methamphetamine use on November 17, 2014; December 29, 2014; March 25, 2015; June 12, 2015; October 7, 2015; and March 1, 2016.

May 16, 2016. The trial court issued findings of fact and conclusions of law on June 17, 2016, terminating Mother and Father's parental rights to Z.S. Both parents now appeal.

## Termination of Parental Rights

[7] We have long noted that the purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for the termination of such rights when the parents are unable or unwilling to meet their responsibilities as parents. *Id*. Indeed, the parents' interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

[8] The termination of parental rights is controlled by Indiana Code section 31-35-2-4(b)(2), which provides *inter alia* that a petition to terminate parental rights must allege

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[9] The burden is on DCS to prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1261. However, as Indiana Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). "Clear and convincing evidence" need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the child remaining with the parents. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a).

[10] On appeal, we have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). That is, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been

made. *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

# I. Father's Argument

[11] Father claims on appeal that the trial court clearly erred in determining that termination of his parental rights was in the best interests of Z.S.[4] When deciding what is in the best interests of the child, the trial court must look beyond the factors identified by DCS and to look to the totality of the evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. The trial court must subordinate the interests of the parent to those of the child, and the court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id*. A recommendation by the case manager or child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*.

[12] Based on the totality of the evidence presented, we conclude that there was sufficient evidence from which the trial court could reasonably conclude that termination of Father's parental rights was in the Z.S.'s best interests. Throughout the course of the underlying CHINS case, Father made little or no

---

[4] Father does not argue that DCS failed to meet its burden with regard to the other elements set forth in Indiana Code section 31-35-2-4(b)(2).

progress. Although Father initially participated in some services, he failed to visit his daughter or contact DCS for over a year. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (observing that the failure to exercise the right to visit one's child demonstrates a lack of commitment to complete the actions necessary to preserve the parent-child relationship). Moreover, the Court Appointed Special Advocate ("CASA") testified that termination of Father's parental rights was in the best interests of Z.S., noting that the CHINS case had been open for two years, yet Father had made no progress and had even regressed with regard to his substance abuse problem.

[13] In short, Father has a serious and untreated addiction to methamphetamine and failed to take advantage of the services offered to him. He failed to maintain contact with DCS and failed for a considerable period to even visit his child. Under these facts and circumstances, the trial court did not clearly err in determining that termination of Father's parental rights was in the best interests of Z.S.

## II. Mother's Argument

[14] Mother argues on appeal that DCS failed to present clear and convincing evidence that the conditions which led to Z.S.'s removal from Mother's care would not be remedied and that continuation of the parent-child relationship in

this case would pose a threat to Z.S.'s well-being.[5] As noted above, however, Subsection 4(b)(2)(B) is written in the disjunctive, and the trial court is required to find that only one prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d at 220. Accordingly, we address only the first prong, i.e. whether there was a reasonable probability that the conditions which led to Z.S.'s removal from Mother's care would not be remedied.

[15] When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). The trial court may disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013). The termination statute does not focus only on the initial reason for a child's removal for purposes of determining whether a parent's rights should be terminated, but also those reasons resulting in the continued placement outside the home. *In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013).

---

[5] Mother makes no argument that DCS failed to meet its burden with regard to the remaining elements of Indiana Code section 31-35-2-4(b)(2).

Here, the condition that led to Z.S.'s removal from Mother's care and her continued placement outside of Mother's home was that Mother used methamphetamine and other drugs. Z.S. tested positive for amphetamine and methamphetamine at birth. Although Mother showed some initial improvement, she relapsed and never successfully treated her serious substance abuse problem. Indeed, Mother tested positive for methamphetamine as recently as March 1, 2016, less than three months prior to the termination hearing.

Mother admits that she relapsed but attempts to minimize the import of this by noting that a DCS witness stated that relapse is a normal part of recovery. She also claims that she demonstrated an ability to maintain sobriety for significant periods of time. However, the facts most favorable to the trial court's decision demonstrate that, although Mother did initially show some progress in treating her drug addiction, she later relapsed and was never again able to maintain any long-term sobriety and went into a "downward spiral." Tr. p. 24. She tested positive for methamphetamine use on November 17, 2014, December 29, 2014, March 25, 2015, June 12, 2015, October 7, 2015, and March 21, 2016. And from November 2015 to March 2016, she missed dozens of drug screens. The trial court could reasonably infer that Mother missed these drug screens because she would have tested positive. *See In re A.B.*, 924 N.E.2d 666, 671 (Ind. Ct. App. 2010) (noting that a parent cannot be permitted to refuse to submit to drug testing then later claim that there was no proof that the parent continued to use

drugs). Mother stopped participating in services in June 2015, and was pregnant with another child as she continued to use methamphetamine.

[18] It is clear from this evidence that, at the time of the termination hearing, Mother continued to have serious, untreated substance abuse problem. This problem resulted in Mother being incarcerated during the underlying CHINS case. In fact, DCS had trouble contacting Mother for a certain period because Mother was afraid of being arrested on an outstanding warrant and being sent back to jail. Contrary to Mother's claim that she did not act inappropriately during visits with Z.S. or "misuse" the service providers, there was evidence that Mother threatened the visitation coordinator and her children during one visitation.[6]

[19] In short, Mother did not have a temporary setback during a period of steady progress toward managing her addiction. To the contrary, after an initial period of progress, Mother began to consistently use methamphetamine again.[7] Accordingly, the trial court did not clearly err when it determined that the there was a reasonable probability that the reason for Z.S.'s removal from Mother's care, Mother's methamphetamine use, would not be remedied. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (concluding that evidence supported

---

[6] Accordingly, Mother's claim that her behavior was not as detrimental as that of the mother in *Wedding v. Dep't of Child Servs. Of Vanderburgh Cnty.*, 907 N.E.2d 533 (Ind. Ct. App. 2008), is unavailing.

[7] Because Mother did not merely temporarily relapse, her claim that her behavior was not as egregious as the mother in *In re A.B.* is without merit.

trial court's finding that the conditions that led to children's removal, specifically parents' substance abuse, would not be remedied, where mother's substance abuse worsened and mother failed to participate in substance abuse treatment), *trans. denied*.

## Conclusion

[20] The trial court did not clearly err in concluding that termination of Father's parental rights was in the best interests of Z.S. Nor did the trial court clearly err in concluding that there was a reasonable probability that the conditions that led to Z.S.'s removal from Mother's care would not be remedied. We therefore affirm the order of the trial court terminating Mother and Father's parental rights to Z.S.

[21] Affirmed.

Kirsch, J., and Altice, J., concur.