

**FILED**

Mar 30 2017, 6:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle F. Kraus
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles A. Benson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 30, 2017 <br><br> Court of Appeals Case No. <br> 02A03-1607-CR-1660 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. <br> 02D04-1602-F1-3 |

**Bailey, Judge.**

# Case Summary

Following a jury trial, Charles A. Benson ("Benson") was convicted of Attempted Murder, as a Level 1 felony;[1] Resisting Law Enforcement, as a Level 6 felony;[2] and Criminal Recklessness, as a Level 6 felony,[3] and was found to be a habitual offender.[4] Benson now appeals, raising the sole issue of whether the trial court committed fundamental error by failing to give a specific jury instruction on unanimity.

We affirm.

# Facts and Procedural History

Around 2:00 p.m. on January 30, 2016, Officer Robert Geiger ("Officer Geiger") of the Fort Wayne Police Department was driving in his marked squad car, in full police uniform. After seeing a vehicle make an improper turn, Officer Geiger initiated a traffic stop. He then approached the vehicle, and asked the driver for her license and registration. The driver said she did not have her driver's license with her and eventually produced an identification card. Officer Geiger then spoke with the male passenger—later identified as

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1.

[2] I.C. § 35-44.1-3-1.

[3] I.C. § 35-42-2-2.

[4] I.C. § 35-50-2-8.

Benson—and Officer Geiger noticed that Benson would not make eye contact with him. Officer Geiger asked Benson for identification, and Benson said he did not have any with him. Benson identified himself as Antoine Woods.

[4] Officer Geiger returned to his squad car to run the information he had been given. While Officer Geiger was doing so, he saw Benson step out of the vehicle and make eye contact with him. Benson had his hands positioned in front of him, toward his waistband, as though he was concealing a weapon. Benson then began running. Officer Geiger immediately ran after Benson, telling Benson to stop, and using his radio to notify dispatch of the pursuit.

[5] Officer Geiger chased Benson, who ran by residences, a church, and an empty market. At times, there were bystanders in the area. At one point while running, Benson turned and made eye contact with Officer Geiger. Benson had a gun in his hand. Benson held eye contact with Officer Geiger, pointed the gun directly at him, and fired multiple shots. Officer Geiger dropped to the ground, called out "shots fired" over his radio, and continued chasing Benson. Officer Geiger then fired several rounds, each missing Benson.

[6] After running through an intersection, Benson ran around one side of a house, while Officer Geiger pursued Benson from the other side. When Benson came around the house, Benson squared up his body so that he was facing Officer Geiger. Benson made eye contact with Officer Geiger, raised his gun so it was pointed directly at Officer Geiger, and fired. Officer Geiger returned fire, and Benson stumbled to the ground. Benson let go of the gun, lifted his hands, and

Officer Geiger kneeled on Benson to control him. Additional officers arrived, and Benson was arrested. No one was struck during the pursuit, which lasted around ninety seconds. It was later determined that Benson's gun had jammed during the shooting, and the gun contained additional rounds of ammunition.

[7] On February 4, 2016, the State charged Benson with Count I, Attempted Murder; Count II, Resisting Law Enforcement; Count III, Criminal Recklessness; and Count IV, Unlawful Possession of a Firearm by a Serious Violent Felon.[5] The State later added Count V, a habitual offender enhancement, and Count VI, a firearm enhancement.[6] The trial court conducted a bifurcated jury trial on June 1, 2016 and June 2, 2016. During the guilt phase of the trial, Officer Geiger testified, and there was also testimony from residents who heard or saw a portion of the incident. At some point during the trial, Counts IV and VI were dismissed. At the conclusion of the guilt phase, the jury found Benson guilty of Counts I, II, and III. The trial court then conducted the habitual offender phase, after which the jury found Benson to be a habitual offender.

[8] On July 1, 2016, a sentencing hearing was conducted. The trial court entered judgment against Benson and sentenced him to consecutive sentences of 40 years on Count I and one year on Count II. On Count III, the trial court

[5] I.C. § 35-47-4-5.

[6] I.C. § 35-50-2-11.

sentenced Benson to 2 ½ years, with the sentence to be served consecutive to Count I. The sentence for Count I was enhanced by 20 years for the habitual offender enhancement, for an aggregate sentence length of 62 ½ years imprisonment.

[9] Benson now appeals.

# Discussion and Decision

[10] Benson contends that the trial court committed fundamental error when it failed to give a specific jury instruction on unanimity after the State produced evidence that Benson fired a gun on two occasions during the pursuit. At the outset, we note that Benson did not include the final jury instructions in the appellate record.[7] Nonetheless, we address Benson's argument assuming, *arguendo*, that the trial court did not give the specific unanimity instruction that Benson now seeks.

[11] Here, Benson neither objected to the trial court's instructions nor offered his own unanimity instruction. In such circumstances, unless the trial court's error was fundamental, Benson has waived this issue for review. *See Baker v. State*,

---

[7] Failure to provide a proper record for appeal has been found to be grounds for waiver of any alleged error based upon the absent material. *See, e.g.*, *Cox v. State*, 475 N.E.2d 664, 666-67 (Ind. 1985); *see also* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to . . . the Appendix or parts of the Record on Appeal relied on."); *but see* App. R. 49(B) (providing that "[a]ny party's failure to include any item in an Appendix shall not waive any issue or argument"). We remind counsel that the appellant "bears the burden of presenting a record that is complete with respect to the issues raised on appeal." *Ford v. State*, 704 N.E.2d 457, 461 (Ind. 1998).

948 N.E.2d 1169, 1178 (Ind. 2011). The fundamental error exception is "extremely narrow." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).

> [T]o be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. *Pope v. State*, 737 N.E.2d 374, 380 (Ind. 2000). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.* Harm is not shown by the fact that the defendant was ultimately convicted. *Id.* Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.*

*Baker*, 948 N.E.2d at 1178-79.

[12] In Indiana, a guilty verdict in a criminal case "must be unanimous." *Fisher v. State*, 291 N.E.2d 76, 82 (1973). We require unanimity "as to the defendant's guilt" but "it is not required as to the theory of the defendant's culpability." *Taylor v. State*, 840 N.E.2d 324, 333 (Ind. 2006). Certain cases, however, present problems with jury unanimity. *See Baker*, 948 N.E.2d at 1173-79. To address these problems, in *Baker*, the Indiana Supreme Court held that trial courts should give a specific type of unanimity instruction when the circumstances of the case so require. *Id.*

[13] In *Baker*, the defendant was charged with a single count of child molestation with respect to each victim, but the jury heard evidence of multiple distinct acts

of molestation concerning each victim. *Id.* at 1177. The *Baker* Court recognized that under such circumstances—where "evidence is presented of a greater number of separate criminal offenses than the defendant is charged with"—a basic unanimity instruction is insufficient. *Id.* at 1175. This is because, absent a more particular instruction, the jury could unanimously agree that the defendant was guilty, yet, in doing so, rely on different acts in evidence. *See id.* at 1177. In other words, the State could point to multiple, separate criminal acts and the jury could convict, despite it being divided about which acts occurred. To remedy this unanimity issue, the *Baker* Court held that:

> The State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

*Id.*

[14] Here, Benson argues that *Baker* applies and that the trial court should have given a specific instruction on unanimity. He directs our attention to the evidence, which indicated that Benson fired his gun on two occasions during the ninety-second pursuit. Benson points out that the State did not distinguish between those instances in seeking an attempted murder conviction. Rather, in charging Benson with attempted murder, the State alleged that Benson took a substantial step toward committing the crime of murder "by discharging a

firearm at [Officer] Geiger." (App. Vol. II at 13.) Moreover, the State pointed to both instances of gunfire and generally argued that Benson "tr[ied] to kill Officer Geiger by pointing the gun at him and firing." (Tr. Vol. II at 62, 75.) Benson contends that "[t]here is no way to know if the jury was unanimous . . . [as] to which act constituted the attempted murder" (Appellant's Br. at 15) and that the trial court fundamentally erred by failing to give the type of unanimity instruction set forth in *Baker*.[8]

[15] Benson ultimately parses the ninety-second pursuit and would have us require that the jury precisely identify which moment he attempted to murder Officer Geiger—the first time he shot directly at him, the second time he shot directly at him, or both times. However, under the "continuous crime doctrine," if the defendant's acts are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," the defendant's conduct amounts only to a single chargeable crime. *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010). Where the continuous crime doctrine applies, the doctrine prohibits multiple convictions of the same crime for the same continuous offense. *See Hines v. State*, 30 N.E.3d 1216, 1219-20 (Ind. 2015); *Gomez v. State*, 56 N.E.3d 697, 703-04 (Ind. Ct. App. 2016).

---

[8] In arguing fundamental error, Benson directs us to a memorandum decision. We remind counsel that a memorandum decision "shall not be regarded as precedent and shall not be cited to any court," App. R. 65(D), except under limited circumstances that do not apply here. *See id.*

[16] Here, the evidence indicates that, over the course of ninety seconds, Benson shot a gun at Officer Geiger on two occasions during the brief, continuous pursuit. Under these circumstances, the continuous crime doctrine applies, and Benson could be properly charged with only one count of attempted murder, not two counts. *See Nunn v. State*, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998) (determining that two instances of gunfire, over a short period, constituted only one attempt at murder and therefore could support only one conviction).[9] Therefore, unlike in *Baker*, the jury was not presented with evidence "of a greater number of separate criminal offenses" than charged. *Baker*, 948 N.E.2d at 1175. Rather, the number of charged counts of attempted murder equaled the number of chargeable attempted murder offenses indicated by the evidence. Here, the concerns in *Baker* are not present, and therefore the trial court did not err in failing to give a *Baker* type of jury instruction on unanimity.

## Conclusion

[17] The trial court did not commit fundamental error in failing to give a specific jury instruction on unanimity.

---

[9] Benson urges that the State "argued that there were two attempts on officer Geiger's life but only charged Benson with one count." (Appellant's Br. at 14.) To the extent Benson is suggesting that the State, through argument, can avoid the continuous crime doctrine, we disagree, as it is the doctrine itself that protects against problematic outcomes if the State could readily do so. *See, e.g.*, *Nunn*, 695 N.E.2d at 125 ("Suppose [the defendant] had possessed an automatic weapon with a fifty round clip, and that in one burst he fully discharged the weapon at the officer without hitting him. Could it be seriously contended that he thereby committed fifty attempted murders . . . ?").

[18]     Affirmed.

Najam, J., and May, J., concur.