FILED

Feb 11 2019, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Steven Knecht | Curtis T. Hill, Jr. |
| Lafayette, Indiana | Attorney General of Indiana |
| | Tyler G. Banks |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael R. Heckard, | February 11, 2019 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-1376 |
| v. | Appeal from the Carroll Circuit Court |
| State of Indiana, | The Honorable Benjamin A. Diener, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 08C01-1702-F1-1 |

**Tavitas, Judge.**

## Case Summary

[1] Michael Heckard appeals his convictions and sentence for two counts of child molesting, Level 1 felonies. We affirm.

## Issues

Heckard raises three issues on appeal, which we restate as follows:

> I.    Whether the trial court erred in excluding evidence related to the victim's anal tear.

> II.   Whether Heckard's two convictions violate the continuous crime doctrine.

> III.  Whether Heckard's sentence is inappropriate.

## Facts

D.K. and her four siblings, C.K., Da.K., Ca.K., and E.K. lived with their mother (the "mother") in a home in Carroll County. Heckard was the mother's boyfriend, and he lived with the mother and the children at the mother's home. Heckard and the mother met on a dating website and had been dating just over a year at the time the incident occurred.

On December 22, 2016, forty-one-year-old Heckard and seven-year-old D.K. went on a few errands. During this time, the mother was at work, and according to the mother, it was normal for the children to be alone with Heckard in the house. Heckard and D.K. were gone for a few hours before returning home.

Once Heckard and D.K. returned home, Heckard then went in the bathroom and D.K followed. Heckard closed and locked the bathroom door. Heckard removed his clothes, and D.K. did the same. Heckard then instructed D.K. to

"lay on him" with D.K.'s head facing Heckard's feet. Tr. Vol. IV p. 72. Heckard then made D.K. "put [D.K.'s] mouth on [Heckard's] private." *Id*. at 71. After, Heckard "stuck his mouth on [D.K.'s] private." *Id.* D.K. stated that Heckard touched her "private" with "his tongue." *Id.* at 74. D.K. stated that, when she touched him, there was "gooey stuff" that looked like "strings." *Id.* at 74.

[6] While they were in the bathroom, Ca.K. knocked on the door because she had to use the bathroom. Heckard put his clothes on and left the bathroom. D.K. put her clothes on and brushed her teeth "[b]ecause it was gross." *Id.* at 75. Afterwards, D.K. left the bathroom.

[7] Da.K., D.K.'s brother, who was standing in the kitchen doorway, indicated that he could see the bathroom door from where he was standing. Da.K. witnessed Heckard exit the bathroom. Heckard walked past Da.K. and did not say anything to Da.K., which was "weird" to Da.K, because Heckard would typically acknowledge Da.K. when he walked past him. *Id*. at 13. A few moments later, Da.K. saw D.K. walk out of the bathroom in "weird clothes." *Id.* Specifically, Da.K. noted that D.K.'s shirt exposed her stomach, and her shorts appeared small. Later that evening, around 5:30 or 6:00 p.m. after Heckard went to work, D.K. and Da.K. told their mother about the incident with Heckard.

[8] The mother then called Carroll County Sheriff's Office, and Deputy Drew Yoder was dispatched to the residence in Carroll County. Deputy Yoder spoke

with D.K. and Da.K., collected D.K.'s clothing, which included a white sweater, and took the items back to the laboratory for forensic testing. D.K.'s mother took D.K. to Riley Children's Hospital where a sexual assault exam was performed on D.K.

[9] Heckard was charged with Count I, child molesting, a Level 1 felony; and Count II, child molesting, a Level 1 felony. The charging information for Count I alleged that:

> [Heckard], a person of at least twenty-one (21) years of age, *did perform* [] sexual conduct with D.K., a child under the age of fourteen years (14), to-wit: seven years of age.
>
> All of which is contrary to the form of the statute in such cases made and provided, to-wit: I.C. 35-42-4-3(a) and I.C. 35-42-4-3(a)(1) . . .

Appellant's App. Vol. II p. 15 (emphasis added). Count II alleged that:

> [Heckard], a person of at least twenty-one (21) years of age, *did submit to* [] sexual conduct with D.K., a child under the age of fourteen years (14), to-wit: seven years of age.
>
> All of which is contrary to the form of the statute in such cases made and provided, to-wit: I.C. 35-42-4-3(a) and I.C. 35-42-4-3(a)(1) . . .

*Id.* at 16 (emphasis added). A jury trial took place from April 16 to April 19, 2018.

[10] At the jury trial, Jena Lane, a forensic nurse at IU Health, testified that she performed the sexual assault exam on D.K. The sexual assault exam included a "head-to-toe assessment looking for any injuries and then taking swabs of at least the oral cavity, vaginal area and anal area." Tr. Vol. III pp. 106-07. Lane also testified about the report from the sexual assault exam, which is the basis of Heckard's claim regarding exclusion of evidence regarding an anal tear.

[11] Shawn Stur, a forensic scientist with the Indiana State Police Laboratory in Lowell, testified that she examined the DNA evidence collected from D.K.'s sexual assault exam and D.K.'s sweater. DNA was detected on D.K.'s underwear that she wore to the hospital following the assault, the anal swab, and the external genital swab. Accordingly, the items were sent to the Indiana Police Laboratory in Indianapolis for further testing.

[12] Heather Crystal, a forensic DNA analyst with the Indianapolis laboratory, analyzed the anal swabs, external genital swabs, and underwear sample, and compared it with Heckard's DNA sample. As to the anal swab, the results indicated that "[t]he Y-STR profile from the anal swabs was consistent at every location to the DNA standard from [Heckard]."[1] Id. at 213. As to the external genital swabs, the "Y-STR profile obtained from the combined swabs is consistent with the Y-STR profile obtained from [Heckard]." Id. at 215. Specifically, the sample on this particular area was "more male DNA [] than

---

[1] "Y-STR" is "Y chromosome short tandem repeating" and identifies the locations of the Y-chromosome as a way of studying male DNA. Tr. Vol. III p. 198.

[Crystal] normally see[s] in a Y-STR sample." *Id.* at 216. Finally, Crystal testified that as to D.K.'s underwear, the "Y-STR profile obtained from the sample of the underwear is consistent with the Y-STR profile obtained from [Heckard]."[2] *Id.* Crystal was unable to determine the source of the DNA, whether it be from semen, saliva, or skin.

[13] In closing argument, the State again referenced the report and the anal tear, stating:

> And remember what the second lab tech said. There was only a partial identification on the anal swab. Meaning the DNA didn't match every location tested to Mr. Heckard's DNA. They tested 23 locations. She said on the anal swab only 14 matched, but on the genital swab and on the underwear, the second pair of underwear she is wearing, it matches all 23 locations. So there is enough male DNA there that is transferred from her genital area to this fresh pair of underwear. Enough DNA that matches Mr. Heckard in all 23 locations on his Y chromosome. Also heard about an unexplained anal tear from the nurse's examination. So to say that the physical evidence doesn't match the testimony that is just not reasonable.

Tr. Vol. IV p. 168. Heckard's counsel did not object to the State's argument.

[14] The jury found Heckard guilty of both counts. At sentencing, the trial court found the following aggravating factors: (1) Heckard's "history of criminal or

---

[2] Crystal indicated that with Y-STR DNA, she "cannot uniquely identify a specific individual[,]" and instead "can just say it is consistent with that person and their paternal lineage." *Id.* at 218.

delinquent behavior;"[3] (2) the age of the victim under seven years of age; and (3) Heckard's position of having the care, custody, or control of the victim. Tr. Vol. V p. 23. The trial court found no mitigating factors. Accordingly, the trial court sentenced Heckard to forty years for Count I and forty years for Count II to be served concurrently at the Department of Correction.

## Analysis

### *A. Exclusion of Evidence*

[15] Heckard first argues that the trial court abused its discretion by "not allowing testimony about the doctor's impression of the cause of [D.K.'s] anal tear (constipation), and the treatment for the condition, once the State had placed the existence of the anal tear before the jury." Appellant's Br. p. 18. Heckard also argues that it was error for the trial court to decline to direct the forensic nurse to answer questions during Heckard's offer of proof.

[16] "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb the court's rulings only where the petitioner has shown an abuse of that discretion." *Bowman v. State*, 51 N.E.3d 1174, 1180 (Ind. 2016). An abuse of discretion occurs only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

---

[3] The trial court, however, noted that "this is tempered by the quantity of that behavior, which is a single conviction and the fact that the conviction I believe occurred in 2004, which is some time ago, and the Defendant has had a prolonged period of law abiding life." Tr. Vol. V p. 23. Accordingly, the trial court said the "aggravating factor is tempered, but nonetheless an aggravating factor." *Id.*

*Id.* "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). "To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury." *Id.*

[17] As for offers of proof, an offer of proof is required to preserve an error in the exclusion of a witness's testimony. *Dylak v. State*, 850 N.E.2d 401, 408 (Ind. Ct. App. 2006), *trans. denied*. Indiana Evidence Rule 103(a)(2) provides: "If the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony, as well as the potential for prejudice if it is excluded. *Dylak*, 850 N.E.2d at 408.

[18] Heckard's specific challenge focuses on the testimony by Lane. Lane testified regarding several aspects of the sexual assault exam. After defense counsel asked more questions regarding D.K.'s exam, Lane stated: "I can't really speak for the actual physical and medical exam for [D.K.]." Tr. Vol. III p. 113. When asked why she was unable to talk about it, Lane stated: "I was told per IU Health Legal Department I am not to talk about [D.K.'s] medical information in Court today as that is a HIPAA violation." *Id.*

[19] On redirect examination of Lane, the State asked Lane to identify notes as to "abnormalities" that were listed in Lane's written report. *Id.* at 125. Lane

indicated that there was a "small tear" near D.K.'s anus. *Id.* at 126. Defense counsel did not object to the question.

[20]  On recross examination, defense counsel asked about the "diagnosis for the anal tear." *Id.* at 129. The State objected to the question on the grounds of hearsay, as the diagnosis came from a doctor and not Lane. Out of the presence of the jury, defense counsel argued the following:

> I don't believe that it is for the truth of the matter asserted. What the State is trying to imply and have the jury infer is that there is some kind of anal tear due to the child molesting committed by Mr. Heckard. That is not true. The State's own exhibit shows that, and it is the State's duty to provide those doctors if they want them here to testify. [Lane] performed the exam. Her name is on the page. I wanted to show the nurse exam and her name. She is aware of the diagnosis, which is constipation by the way, and I'd like her to be able to say that to the jury. We are riding a fine line where she can't testify, but she is testifying, no HIPAA release form, but she is here trying to testify for the State, but she can only testify to chain of custody.

*Id.* at 129-30.

[21]  The trial court ultimately sustained the State's objection. *Id.* at 130. When the jury returned to the court room, defense counsel continued questioning Lane regarding the diagnosis related to the anal tear observed on D.K. The following exchange took place:

> Q      Thank you, Judge. Nurse, can you tell the jury what Miralax is used for?

> A  Miralax is prescribed by a doctor for constipation typically.
>
> Q  And can constipation cause anal tears?
>
> A  Yes.
>
> Q  And, in fact, was that the diagnosis and treatment of [D.K.]?  Constipation treated with Miralax?

*Id.* at 131-32.  The State again objected, which the trial court sustained.[4] Defense counsel asked to make an offer of proof.  The trial court stated, "You may do so at the earliest appropriate time outside of the presence of the jury." *Id.* at 133.

[22]  After Lane's testimony was completed, and outside the presence of the jury, defense counsel renewed his request to make an offer of proof.  The court granted his request.  Defense counsel cross-examined Lane as follows:

> Q  And the impression from the doctor was constipation, is that correct?
>
> A  That the tears could be from constipation.

---

[4] The grounds on which the State objected, and the trial court sustained, was hearsay.  Specifically, the State argued that, although Lane did the exam and made several observations, "[s]he didn't do the diagnosis.  The doctor is not here to testify as to what the diagnosis is and so she is reading the diagnosis of an out-of-court statement for the truth of the matter . . . ."  Tr. Vol. III p. 129.

> Q    In fact, [D.K.] was treated with Miralax, is that correct.
>
> A    Well I am not here to discuss [D.K.'s] medical records. Just medical information.

*Id.* at 136.  Defense counsel then requested that the trial court instruct Lane to answer the question.  The trial court denied defense counsel's request and stated:

> You keep doing something that has been sustained.  I understand that you are making an offer of proof and so you can continue attempting to make an offer of proof through what this witness would testify to as to the nonexistence of the objection, and if the witness gives a response that is different than what counsel desires that is the response that the witness gives.

*Id.* at 136-37.  Defense counsel did not proceed further with the offer of proof.

[23]    First, even if it was error for the trial court to not require Lane to answer the question regarding Miralax during the offer of proof, the error was harmless.  To be clear, the trial court did not deny Heckard the opportunity to present an offer of proof; the trial court denied defense counsel's way of presenting the offer of proof.  Ultimately, during the offer of proof, Lane testified that the doctor's impression was that "the tears could be from constipation."  *Id.* at 136.  Enough evidence was presented for our current review, which is the purpose of the offer of proof.

[24]    Heckard also argues that it was error for the trial court to "not admit[] testimony regarding the likely cause of [D.K.'s] injury after the state elicited

testimony that she had such an injury." Appellant's Br. p. 21. We need not address squarely whether the trial court's failure to admit the evidence was error because, even if it was error for the trial court to fail to admit this evidence, the error was harmless.[5] Specifically, Heckard was not charged with a penetration crime and no evidence was presented regarding a penetration. Because Heckard was not charged with a penetration crime, the testimony regarding the anal tear was not an element of the charged child molesting offenses. The prosecutor and witnesses clearly described the sexual acts Heckard was accused of submitting to and performing on D.K., and it was clear there was no penetration allegation.

[25] We also disagree with Heckard's assertion that the jury was misled in some way or that this testimony had some probable impact on the jury. Aside from the State's closing argument, there was no direct connection made between the anal tear and the crime which Heckard was charged with. Moreover, Heckard's counsel did not object to this argument during closing. Accordingly, this argument is waived. *See Isaacs v. State,* 673 N.E.2d 757, 763 (Ind. 1996) ("A defendant waives possible error concerning the prosecutor's closing argument when he fails to object to the argument at trial") (citations omitted).

---

[5] Importantly, when Heckard sought to introduce a page from Lane's report, the State requested that the entire report be admitted into evidence if the one page was going to be admitted. Heckard's counsel then withdrew his request to admit Lane's report.

Regardless, the State's closing argument still likely had no probable impact on the jury. DNA evidence presented at trial indicated that DNA belonging to Heckard, and/or another male family member, was found on D.K.'s underwear, anal swabs, and external genital swabs.[6] Second, Lane did ultimately testify, in front of the jury, that constipation can cause anal tears. Heckard sought to introduce the report from the sexual assault exam, but only withdrew that request once the State wanted to introduce the entire report. That was Heckard's choice. In other words, Heckard's true complaint on this issue is simply that he could not present evidence in the exact way in which he desired. Any error by the trial court in this regard was harmless.

## B. Continuous Crime Doctrine

Heckard next argues that his two convictions fall under the continuous crime doctrine, and accordingly, conviction of both offenses violates the prohibition against double jeopardy.[7] First, Heckard argues that his convictions violate the continuous crime doctrine because the doctrine "provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, and singleness of purpose and continuity of action as to constitute a single transaction." Appellant's Br. p. 35. Heckard

---

[6] The testimony indicated that D.K. had not been around any of Heckard's male relatives at the time of the incident.

[7] *See Flores v. State,* 114 N.E.3d 522, 523, n.2 (Ind. Ct. App. 2018) ("Indiana case law alternates between 'continuing' crime doctrine and 'continuous' crime doctrine. Because the Indiana Supreme Court referred to it as the 'continuous' crime doctrine in its 2015 decision in *Hines v. States,* 30 N.E.3d 1216 (Ind. 2015), so do we.").

then argues that he was "twice convicted of committing the same continuous offense. Both acts are classified as child molesting, and are charged under the same statute as 'other sexual conduct.'" *Id.* at 37.

[28] We write first to clarify the application of the continuous crime doctrine. In *Hines,* our supreme court made a distinction between whether the continuous crime doctrine applies and whether it is violated. Our supreme court stated:

> The continuous crime doctrine does not apply to the facts of this case. The defendant was convicted of Criminal Confinement as a Class C felony and Battery as a Class D felony. [Hines] was not convicted of multiple charges of criminal confinement, nor multiple charges of battery. Nor is Battery a crime for which all of the elements necessary to impose criminal liability are also elements found in Criminal Confinement, or vice versa. Criminal Confinement and Battery are two distinct chargeable crimes to which the continuous crime doctrine does not apply.

*Hines v. State*, 30 N.E.3d 1216, 1220-21 (Ind. 2015). In other words, the evaluation of whether the continuous crime doctrine applies is distinct from the question of whether the continuous crime doctrine has been violated. In general, the cases of this court after our supreme court's 2015 *Hines* decision follow this analysis, even if not explicitly stating as much. *See Flores v. State,* 114 N.E.3d 522, 523-24 (Ind. Ct. App. 2018) (considering whether Flores' two convictions for Level 4 felony child molesting violate the continuous crime doctrine); *see also Norris v. State,* 113 N.E.3d 1245, 1253 (Ind. Ct. App. 2018) (considering whether Norris' two resisting law enforcement convictions violate the continuous crime doctrine); *see also Dilts v. State,* 49 N.E.3d 617, 632 (Ind.

Ct. App. 2015) (holding that Dilts' "two child molesting convictions—one for sexual intercourse and one for deviate sexual conduct that occurred on different days—were 'two distinct chargeable crimes' to which the continuous crime doctrine did not apply"), *trans. denied*. Here, we would agree with the *Dilts* court that, because Heckard was convicted of two distinct, chargeable crimes, the continuous crime doctrine should not *apply*. Because both of Heckard's convictions were under the broad category of child molesting, however, we will address whether Heckard's convictions *violate* the continuous crime doctrine.

[29] The continuous crime doctrine "establishes that actions that are sufficient to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Pugh v. State*, 52 N.E.3d 955, 970 (Ind. Ct. App. 2016), *trans. denied*. "The doctrine involves those instances where a defendant's conduct amounts to only a single, chargeable crime such that the State is prevented from charging a defendant twice for the same offense." *Id.* "The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Hines*, 30 N.E.3d at 1219. "'Where the issue presented on appeal is a pure question of law, we review the matter de novo.'" *Id.* (quoting *State v. Moss-Dwyer,* 686 N.E.2d 109, 110 (Ind. 1997)).

[30] We disagree with Heckard that he was convicted of the same offense twice, but we do recognize that he was charged under the same statute and same broad

classification of "child molesting."  The statute Heckard was convicted under states:

> (a) A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony.  However, the offense is a level 1 felony if:
>
>> (1) it is committed by a person at least twenty-one (21) years of age; . . .

Ind. Code § 35-42-4-3(a)(1).  Other sexual conduct, as defined in the statute, is:

> . . .an act involving:
>
>> (1) a sex organ of one (1) person and the mouth or anus of another person; or
>>
>> (2) the penetration of the sex organ or anus of a person by an object.

I.C. § 35-31-5.2-221.5.  We turn now to the specific acts involved here, as "[t]he continuous crime doctrine requires a fact-sensitive analysis." *Gomez v. State,* 56 N.E.3d 697, 703 (Ind. Ct. App. 2016).

[31]    As outlined in the charging information, and cited above, Heckard's charge in Count I was for the sexual act that he performed on D.K.  Heckard's charge in Count II was for the sexual act that he forced D.K. to perform on him.  In other words, Heckard was convicted of two distinct actions: one for performing a

sexual act on D.K. and one for forcing D.K. to perform a sexual act. The focus of Heckard's argument is the statute's use of the words "other sexual conduct" in the statute. *See* Appellant's Br. p. 37. The focus, however, should be on the specific actions alleged.

[32] Under this statute, someone may be convicted of performing or submitting to sexual conduct. The focus is on the actor: in one instance, Heckard performed a sexual act on D.K., and in the other, he forced D.K. to perform a sexual act on him. Heckard violated D.K. in two separate and distinct ways. These crimes require proof of two distinct actions. Specifically, one act required proof of the sexual contact between Heckard's sex organ and D.K.'s mouth, and the other, D.K.'s sex organ and Heckard's mouth. Heckard does not stand to benefit from the continuous crime doctrine for his conduct merely because the legislature has described both separate, distinct actions under the same statute.[8]

[33] "The purpose [of the continuous crime doctrine] is to prevent the State from charging a defendant twice for the same continuous offense." *Firestone v. State,* 838 N.E.2d 468, 472 (Ind. Ct. App. 2005). Therefore, even when committed very close in time, two distinct child molestation offenses are separate and

---

[8] The absurdity of an alternative outcome is best demonstrated by our analysis regarding whether the continuous crime doctrine applies, versus whether the continuous crime doctrine is violated. Had the legislature here called Heckard's performance of a sexual act on D.K. child molesting, and called Heckard's forcing D.K. to perform a sexual act on Heckard a "forcible sexual act" or anything other than child molesting, we would not even be evaluating whether the continuous crime doctrine was violated, and only be considering whether it applied. We do not believe that the legislature intended a result that Heckard could be relieved of two convictions for two separate, distinct actions merely because the legislature put the different actions under the same statutory heading.

distinct crimes. In *Firestone,* this court held that the crimes of rape and criminal deviate conduct were not continuous, but separate and distinct crimes when the defendant raped the victim, and then forced her to perform oral sex on him. *Firestone,* 838 N.E.2d at 472. The continuity of Heckard's actions—performing a sexual act on D.K., then forcing D.K. to perform a sexual act on him—does not negate the fact that the acts were separate criminal acts, accomplished by Heckard's separate actions.

[34] Further, we believe a panel of our court's decision in *Benson v. State,* 73 N.E.3d 198, 203 (Ind. Ct. App. 2017), *trans. denied*, demonstrates the purpose of the continuous crime doctrine. In *Benson,* a panel of this court found "the evidence indicates that, over the course of ninety seconds, Benson shot a gun at Officer Geiger on two occasions during the brief, continuous pursuit. Under these circumstances, the continuous crime doctrine applies, and Benson could be properly charged with only one count of attempted murder, not two counts." *Benson,* 73 N.E.3d at 203. Here, Heckard was not performing the same sexual acts on D.K. in close succession. Instead, Heckard performed an act on D.K., then made D.K. perform a separate act on him. Therefore, Heckard's convictions did not violate the continuous crime doctrine because Heckard was not charged twice with the same continuous offense.

[35] We note that, even looking at the continuity analysis, the evidence is uncontroverted that "[D.K.] said [Heckard] 'made me stick my mouth on his private. . . and *then* he stuck his mouth on my private.'" Appellant's Br. p. 34 (emphasis added). This is similar to the argument made in *Firestone,* that,

"because both offenses occurred in a relatively short period of time and in the same bedroom, [Firestone's] continuous actions should [have] prevent[ed] him from being convicted of two crimes." *Firestone,* 838 N.E.3d at 472. As seen in *Firestone,* mere closeness in time is not determinative.

[36]    Under these facts, Heckard's convictions do not violate the continuous crime doctrine.

### *C. Sentence*

[37]    Finally, Heckard argues that his sentence was inappropriate. Specifically, Heckard argues that the "[forty-] year enhanced sentence given here is inappropriately severe, given the nature of the offense and [Heckard's] character." Appellant's Br. p. 41. Indiana Appellate Rule 7(B) provides that this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[38]    In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might

be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[39] We look to the statutory ranges established for the classification for the relevant offense. Heckard was convicted of two Level 1 felonies. Indiana Code Section 35-50-2-4(b) states:

> Except as provided in subsection (c), a person who commits a Level 1 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between twenty (20) and forty (40) years, with the advisory sentence being thirty (30) years.

Indiana Code Section 35-50-2-4(c) states:

> A person who commits a Level 1 felony child molesting offense described in:
>
>> (1) IC 35-31.5-2-72(1)[9]; or

---

[9] Indiana Code Section 35-31.5-2-72(1), which applies to Heckard's case, states:

> (1) Child molesting involving sexual intercourse, deviate sexual conduct . . . or other sexual conduct . . . for a crime committed after June 30, 2014, if:
>
> (A) the offense is committed by a person at least twenty-one (21) years of age; and
>
> (B) the victim is less than (12) years of age.

(2) IC 35-31.5-2-72(2);

> shall be imprisoned for a fixed term of between twenty (20) and
> fifty (50) years, with the advisory sentence being thirty (30) years.

Here, the trial court imposed two forty-year sentences to run concurrently.

[40] We first review the nature of Heckard's offense. Heckard was convicted of submitting to a sexual act by a minor under the age of fourteen and performing a sexual act on a minor under the age of fourteen. Heckard was over the age of twenty-one. D.K., the victim, was seven years old at the time of the crime. As our supreme court has said, "the victim's age also suggests a sliding scale in sentencing, as younger ages of victims tend to support harsher sentences." *Hamilton v. State,* 955 N.E.2d 723, 727 (Ind. 2011). In other words, "[t]he younger the victim, the more culpable the defendant's conduct." *Id.*

[41] Next, we consider Heckard's character. Heckard argues that, in considering his character, his "criminal history should not have been considered an aggravating circumstance at all[,]" because it was only "one Class B misdemeanor conviction in 2004 for harassment." Appellant's Br. p. 43. Heckard cites *Hamilton* to support his argument that "a criminal history not involving sexual misconduct does not, alone, support a maximum sentence for a sexual misconduct conviction." *Id.* at 43.

[42] *Hamilton* is distinguishable on this point in several aspects. First, unlike Hamilton, Heckard did not receive the maximum sentence, as he could have received fifty years for his convictions. Second, Heckard was convicted of two

separate child molesting offenses—not of one offense as in Hamilton's case. Regardless, the trial court here noted the remoteness of Heckard's criminal conviction and also stated that it took that into consideration. *See Hamilton,* 955 N.E.2d at 727 (noting "the chronological remoteness of the convictions should factor into determining the appropriateness of a harsher sentence").

[43] In addition, Heckard committed this crime when he was in a position of trust with the victim. Heckard lived with D.K. and her siblings. He was the mother's boyfriend and lived with the family for some time. The mother testified it was not unusual for the children to be left alone with Heckard or to accompany Heckard alone in the car, as D.K. did that day. It is evident Heckard was in a position of trust with the children. Violating his position of trust does not bode well for Heckard's character.

[44] In light of the nature of Heckard's offenses and his character, we do not find his forty-year concurrent sentences to be inappropriate.

## Conclusion

[45] Any error as a result of the trial judge's exclusion of evidence regarding D.K.'s anal tear contained in the medical report was harmless. In addition, Heckard was charged with and convicted of two separate criminal acts, and his convictions do not violate the continuous crime doctrine. Finally, Heckard's sentence was not inappropriate. Accordingly, we affirm.

Affirmed.

Brown, J., and Altice, J., concur.