


FILED
Nov 15 2024, 8:58 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Patrick L. Thompson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

November 15, 2024

Court of Appeals Case No.
23A-CR-1851

Appeal from the Hancock Superior Court

The Honorable Donald J. Davis, Judge

The Honorable Daniel Lee Pflum, Senior Judge

Trial Court Cause No.
30D01-2103-F3-263

**Opinion by Chief Judge Altice**
Judges Bailey and Mathias concur.

**Altice, Chief Judge.**

## Case Summary

Following a jury trial, Patrick L. Thompson was convicted of five counts of Level 3 felony rape. He contends that four of these convictions must be reversed on double jeopardy grounds.

We affirm.

## Facts & Procedural History

In the early morning hours of January 2, 2021, Thompson raped fifteen-year-old S.C., who was his seventeen-year-old son's (M.T.) best friend. S.C. was spending the night at Thompson's home for the first time, and she and M.T. usually spent time together at her house when not at school.

M.T. and S.C. arrived at Thompson's home around 9:00 p.m. on January 1, and shortly thereafter, Thompson began serving them strawberry margaritas. The three drank together for several hours until S.C. became so intoxicated that she vomited on the kitchen floor and all over herself. M.T. then helped S.C. clean up and change her shirt. After S.C. vomited again, she stopped drinking. S.C. took a drunken video of herself with her cell phone, and then Thompson took her phone away and did not return it.

Thompson eventually said it was getting late and they should all go to bed. He and M.T. helped S.C. move from the living room couch to M.T.'s bedroom. M.T. became concerned that S.C. would urinate in his bed, so he encouraged

her to use the restroom, but she refused. Thompson then insisted that she sleep on the couch. S.C. could not walk without falling over, so they both picked her up and helped her to the couch. M.T. then went to bed, leaving his bedroom door open a bit so that he could see into the living room.

[6] At some point, Thompson came over to the couch and began kissing S.C. on the mouth. He proceeded to put his hand inside her pants and then inserted his fingers into her vagina and anus. S.C. was scared and felt as if she were frozen. Thompson stopped when M.T. came out of his bedroom to use the restroom, but M.T. had seen Thompson leaning over the couch.

[7] When M.T. returned to his bedroom, Thompson went in to check on him. The two talked for several minutes about their father/son relationship, which had been rocky. M.T. began to fall asleep, so Thompson left and closed the bedroom door on his way out. After some time, M.T. quietly cracked his door open again because he "felt like things weren't right in that moment." *Transcript Vol. 4* at 109. Once again, he saw Thompson with S.C. on the couch.

[8] Upon returning to the couch, Thompson told S.C. to sit up and then he placed his penis inside her mouth, grabbing the back of her head and pushing it forward. He also put his hand inside her pants again, squeezing around her neck with his other hand. At some point, S.C. looked toward M.T.'s doorway for help, but Thompson slapped her in the face and told her to pay attention. He then squeezed her throat tighter as he kissed her before telling her to come to his bedroom. S.C. told Thompson that she was drunk, tired, and did not

want to go with him, but he grabbed her hand and led her to his room. Crying, S.C. mouthed "help me" to M.T. and reached for him on the way to Thompson's room, but M.T. stayed in his room because he did not feel he could safely intervene.

[9]   Once inside the bedroom, Thompson locked the door and told S.C. to remove her clothes. She complied out of fear. Thompson then pushed her onto the bed and forced her to perform oral sex on him again. Thereafter, he held her legs apart and licked her vagina. After having S.C. help him put a condom on, Thomas climbed on top of her and put his penis in her vagina.

[10]  Meanwhile, M.T. had been frantically calling his grandmother about the situation. She told M.T. to bang on the bedroom door, which he did. M.T. also screamed and yelled. As a result, Thompson stopped having sexual intercourse with S.C. He told her to put her clothes back on and to tell M.T. that she had come into the bedroom because of a nightmare. Thompson then went into his attached bathroom.

[11]  S.C. emerged from the bedroom within minutes of M.T.'s banging on the door. M.T. then helped her put on a sweatshirt before they quickly fled out of M.T.'s bedroom window around 2:40 a.m. S.C. did not have her phone, shoes, or glasses. They ran behind a neighbor's house, where M.T. used his cell phone to call for help.

[12]  On March 3, 2021, the State charged Thompson with thirteen counts, including five counts of Level 3 felony rape. Each rape count was based on a different

type of sexual conduct that was compelled by force: Count I, sexual intercourse; Count II, S.C. performing oral sex on Thompson; Count III, Thompson performing oral sex on S.C.; Count IV, digital penetration of S.C.'s vagina; and Count V, digital penetration of S.C.'s anus. In June 2023, a jury found Thompson guilty as charged. The trial court entered convictions on the five counts of rape and two counts of misdemeanor furnishing alcohol to a minor and vacated the other counts on double jeopardy grounds. The trial court imposed an aggregate sentence of 70 years and 180 days in prison, with 20 years and 180 days suspended to probation.

[13] Thompson now appeals his convictions for rape. Additional information will be provided below as needed.

## Discussion & Decision

[14] On appeal, Thompson argues that only one of his five rape convictions may stand due to Indiana's prohibition on double jeopardy.[1] He asserts that the facts supporting the rape convictions "arose out of a single interaction between Thompson and S.C., one that was limited in time, place and purpose and was continuous in nature." *Appellant's Brief* at 12.

---

[1] We note that Thompson improperly frames the issue in constitutional terms. Our Supreme Court has made clear, however, that the Indiana Double Jeopardy Clause, article 1, section 14 of the Indiana Constitution, protects only against successive prosecutions for the same offense. *Wadle v. State*, 151 N.E.3d 227, 245-46 (Ind. 2020). That is, substantive double jeopardy claims – challenges to multiple punishments in a single proceeding such as presented here – are not of a constitutional dimension.

[15] Our Supreme Court has recognized that substantive double jeopardy claims arise in two principal contexts: (1) when a single criminal act or transaction violates a single statute but results in multiple injuries/victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims. *Wadle*, 151 N.E.3d at 247; *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020). The Court's decision in *Wadle* addressed the latter scenario, and its decision in *Powell* addressed the former scenario. *See Stone v. State*, 226 N.E.3d 829, 832 (Ind. Ct. App. 2024), *trans. denied*. "In either circumstance, the dispositive question is one of statutory intent. *Wadle*, 151 N.E.3d at 247.

[16] Thompson was charged and convicted of five counts of rape under Ind. Code § 35-42-4-1(a), which provides:

> [A] person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when:
>
> > (1) the other person is compelled by force or imminent threat of force….
>
> commits rape, a Level 3 felony.

And four of these counts were for "other sexual conduct" defined as "an act involving: (1) a sex organ of one [] person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-221.5.

[17] Thompson directs us to the *Powell* framework to decide his double jeopardy claim because his multiple rape convictions fell under a single statute. But several cases have made clear that the legislature's decision to delineate separate crimes in one statute rather than multiple statutes should not control which double jeopardy test applies. *See Stone*, 226 N.E.3d at 832-33; *Carranza v. State*, 184 N.E.3d 712, 716 (Ind. Ct. App. 2024); *Koziski v. State*, 172 N.E.3d 338, 342 (Ind. Ct. App. 2021), *trans. denied*. In the rape context, we recently held that the *Wadle* test applied where the convictions were based on separate criminal acts – forcible sexual intercourse and forcible other sexual conduct – set out in the rape statute. *Stone*, 226 N.E.3d at 833. And we have done the same in child molest cases where multiple convictions were based on separate provisions of the same statute. *Carranza*, 184 N.E.3d at 716 (applying *Wadle* where child molesting convictions – one for other sexual conduct and the other for fondling or touching – were "based on separate subsections of the primary charging statute"); *Koziski*, 172 N.E.3d at 342 (applying *Wadle* where child molesting convictions – one for licking victim's vagina and the other for digital penetration of her vagina – were based on two different statutorily defined types of other sexual conduct). Accordingly, where, as here, multiple convictions "fall under separate statutory provisions, each defining a separate crime, the *Wadle* 'multiple statutes' test is a better fit than the *Powell* 'single statute' test." *Koziski*, 172 N.E.3d at 342.

[18] *Wadle* requires a multi-step analysis. We first look to the statutory language of the offenses to determine whether the language clearly permits multiple

punishments, either expressly or by implication. *A.W. v. State*, 229 N.E.3d 1060, 1066 (Ind. 2024) (applying, clarifying, and modifying the *Wadle* test). If multiple punishments are not clearly permitted, we turn to the included-offense statute, Ind. Code § 35-31.5-2-168, to determine whether either offense is included (inherently or factually) in the other. *A.W.*, 229 N.E.3d at 1067. If neither is included in the other, "the analysis ends—full stop" as there is no violation of double jeopardy. *Id*. Otherwise, we move to the third step and "probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether [the] defendant's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id*. at 1071 (quoting *Wadle*, 151 N.E.3d at 249).

[19]    Here, because the rape statute does not clearly permit multiple punishments, we must apply the included-offense statute, which provides:

> "Included offense" means an offense that:
>
> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

I.C. § 35-31.5-2-168. Subsections (2) and (3) are plainly inapplicable in this context, where Thompson was convicted of multiple counts of Level 3 felony rape, none of which involved an attempt or a less serious harm/lesser culpability. Thus, our focus is on subsection (1).

[20] The rape statute, with its incorporation of the statute defining other sexual conduct, sets out different types of rape, each with one or more mutually exclusive material elements, thus criminalizing different conduct. In *Stone*, we held that "sexual intercourse and other sexual conduct are mutually exclusive material elements of rape," and convictions under both do not violate double jeopardy because neither rape conviction is included in the other. 226 N.E.3d at 834. Similarly, in *Koziski*, we upheld two convictions for child molesting that were based on distinct statutory provisions defining other sexual conduct, explaining: "Neither form of 'other sexual conduct' – an act involving 'a sex organ of one (1) person and the mouth or anus of another person' and an act involving 'the penetration of the sex organ or anus of a person by an object' – is established by proof of the other." 172 N.E.3d at 343.

[21] In this case, we are required to parse the statutory provisions even further to consider separate conduct criminalized under the rape statute. As relevant here, the provisions criminalize the following forms of forcible rape: (1) sexual intercourse (I.C. § 35-42-4-1); (2) penetration of the sex organ of a person by an object (I.C. §§ 35-42-4-1 and 35-31.5-2-221.5(2)); (3) penetration of the anus of a person by an object (I.C. §§ 35-42-4-1 and 35-31.5-2-221.5(2)); (4) requiring the victim to submit to oral sex (I.C. §§ 35-42-4-1 and 35-31.5-2-221.5(1)); and (5)

requiring the victim to perform oral sex (I.C. §§ 35-42-4-1 and 35-31.5-2-221.5(1)). Thompson was convicted once for each of these distinct, statutorily defined criminal acts, none of which is established by proof of the same material elements or less than all the material elements required to establish one of the other rape offenses. As none of Thompson's rape convictions was a lesser offense of another, our analysis is over. Thompson's five rape convictions were for separate and distinct crimes[2] and thus do not violate substantive double jeopardy.

[22]     Judgment affirmed.


Bailey, J. and Mathias, J., concur.

---

[2] In *Heckard v. State*, 118 N.E.3d 823 (Ind. Ct. App. 2019), *trans. denied*, we held that although the defendant was charged under the same statute and same broad classification of child molesting, his convictions were for two distinct, chargeable crimes, and thus the continuous crime doctrine did not preclude conviction on both despite the continuity of defendant's actions. We explained:

> Heckard's charge in Count I was for the sexual act that he performed on D.K. Heckard's charge in Count II was for the sexual act that he forced D.K. to perform on him. In other words, Heckard was convicted of two distinct actions: one for performing a sexual act on D.K. and one for forcing D.K. to perform a sexual act. The focus of Heckard's argument is the statute's use of the words "other sexual conduct" in the statute. The focus, however, should be on the specific actions alleged.
>
> Under this statute, someone may be convicted of performing or submitting to [other] sexual conduct. The focus is on the actor: in one instance, Heckard performed a sexual act on D.K., and in the other, he forced D.K. to perform a sexual act on him. Heckard violated D.K. in two separate and distinct ways. These crimes require proof of two distinct actions. Specifically, one act required proof of the sexual contact between Heckard's sex organ and D.K.'s mouth, and the other, D.K.'s sex organ and Heckard's mouth. Heckard does not stand to benefit from the continuous crime doctrine for his conduct merely because the legislature has described both separate, distinct actions under the same statute.

*Id*. at 832 (citation omitted).

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana