Kenneth Wayne HURST, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–983A311.

Court of Appeals of Indiana,
Fourth District.

June 6, 1984.

Thomas M. Carusillo, Elkhart, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Kenneth Wayne Hurst is before us appealing his two consecutive sentences for the delivery of LSD to two undercover police officers. Hurst's plea for the reexamination of this 1982 case rests upon allegations of error in the following:

1. Did the trial court err in admitting the State's two exhibits of LSD without establishing a complete chain of custody?

2. Was it error for the trial court to overrule Hurst's objection to testimony that Hurst had allegedly been observed selling cocaine to a third party prior to the instant offenses?

3. Under the facts of this case, was Hurst improperly convicted for two deliveries of LSD when both sales took place at the same time?

4. Was the verdict contrary to law?

We affirm the convictions but remand for correction of sentence.

## FACTS

During the course of their covert narcotics investigations, two undercover officers of the Elkhart Police Department became acquainted with various subjects involved with drugs. They thereby became familiar with the name "Fish" or "Fishback" as a dealer. The two officers went to the Fishback (later identified as the appellant Hurst) residence, in order to purchase drugs. After negotiating for the sale of LSD, Hurst informed the officers he would have to first get it from his source and would need payment in advance. The male officer handed him $60 for twenty hits; the female officer, $30 for ten hits. Hurst later met the two at the Astrobowl Bowling Alley, and he and a juvenile subject entered their undercover vehicle. The juvenile lent Hurst a pocket knife, and Hurst proceeded to cut the perforated LSD hits from a sheet of white paper. He cut twenty squares, put them in cellophane from a cigarette package and gave them to the male officer. He cut an additional ten, folded them in a piece of paper, and gave them to the female officer. About a half hour later, the two officers met with Detective Sergeant Slayton for the purpose of turning over the evidence. Each placed his or her respective purchase in an individual evidence bag which they then signed, followed by Slayton also signing. Slayton deposited the sealed evidence in a specially designated evidence room to which there exist only two keys, Slayton's and a Lieutenant Thomas's. Thomas was the receiving officer and noted receipt of the evidence in his logbook. He later removed the exhibits from the evidence room for certified mailing to the State Police Laboratory in Lowell. Typically, when such evidence reaches the lab, it is stored in a safe. It was from there that Troy Ballard, the police chemist, removed the two instant exhibits for the laboratory testing which identified each as LSD. Ballard then sealed each exhibit in different bags, the seals of which remained intact at trial. They were then sent back to Elkhart via certified mail where Thomas signed for them and returned them to the evidence room.

On the basis of this evidence, Hurst was convicted of two counts of delivering a controlled substance and was sentenced to two consecutive ten-year terms.

## DECISION

*Chain of Custody*

■ In the case of fungible items presented as evidence, especially narcotics, all the State is required to do is establish a sufficient chain of custody to "strongly suggest" the whereabouts of the evidence from the moment of seizure until introduction at trial. *Holt v. State*, (1980) 272 Ind. 544, 400 N.E.2d 130; *Lewandoski v. State*, (1979) 271 Ind. 4, 389 N.E.2d 706. Hurst has provided us with no evidence which would cast any suspicion that these exhibits had been tampered with. *See, e.g., Guthrie v. State*, (1970) 254 Ind. 356, 260 N.E.2d 579; *Bonds v. State*, (1973) 158 Ind.App. 579, 303 N.E.2d 686. The facts above, as elicited from testimony at trial, strongly suggest that the LSD exhibits remained in police custody throughout the proceedings, without harm to their integrity. There was no error in their admission.

*Evidence of Prior Criminal Activity*

■ While testifying, one of the officers mentioned he had observed Hurst prior to the instant offense. When the prosecutor

asked him to elaborate, he explained that he had observed Hurst deliver a package of what he believed to be cocaine to a third party. Defense counsel objected to this testimony and requested the jury be admonished. The basis of this objection was that because there was no actual evidence cocaine was indeed involved in the observed exchange, the evidence was prejudicial to his client's case. The trial court overruled the objection. On appeal, Hurst elaborates on his allegation of error by claiming that evidence of any prior criminal activity is inadmissible in Indiana and that such evidence here denied him a fair trial. Without having to determine whether this evidence would fit within any of the exceptions to this general rule (*see, e.g., Malone v. State,* (1982) Ind., 441 N.E.2d 1339) or was erroneously admitted, we find no cause for reversal.

For us to order reversal, we would have to find that the improper evidence had a prejudicial impact on the jury's deliberations. *Williams v. State,* (1981) Ind., 426 N.E.2d 662; *Otto v. State,* (1980) Ind.App., 398 N.E.2d 716. In light of the overwhelming evidence of Hurst's guilt presented at trial, we cannot say that error in the admission of this evidence was anything but harmless. *See Howell v. State,* (1980) Ind., 413 N.E.2d 225; *Bricker v. State,* (1976) 264 Ind. 186, 341 N.E.2d 502.

### Number of Offenses

Hurst's most compelling argument (which also includes his challenge to whether the verdicts were contrary to law) devolves upon the number of offenses for which he can be held accountable. He argues that, rather than two convictions, he should have only been found guilty of one offense. He contends that the sales to the two officers were part and parcel of the same transaction. In so arguing, he cites us to several cases he finds pertinent. The thrust of these and other such cases is that there are two divergent types of cases found with the problem of whether single or multiple offenses are present in a single situation. The merger type problem, such as in *Blockburger v. U.S.,* (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, and *Elmore v. State,* (1978) 269 Ind. 532, 382 N.E.2d 893, where the multiple counts charge two different crimes (for example, theft and conspiracy to commit theft), is not present here. The other situation is.

This second type of case deals with instances where the same crime is multiply charged although only one "event" took place. Typical of this genre of cases are those in which we have applied the "single larceny" doctrine, such as in *Bryant v. State,* (1969) 252 Ind. 17, 245 N.E.2d 156, and *Holt v. State,* (1978) 178 Ind.App. 631, 383 N.E.2d 467, where theft from multiple owners or multiple articles stolen from a single owner can result in only one conviction. This principle is also applicable to other types of crimes more analogous to the situation here. In *Duncan v. State,* (1980) Ind., 412 N.E.2d 770, our supreme court stated that the single sale of different controlled substances was a single offense. In so deciding, the court stated "that only one offense is committed when a single transaction is involved between the same principals at the same time and place." *Id.* at 775; *Bates v. State,* (1978) 178 Ind.App. 153, 381 N.E.2d 552 (sale of two controlled substances to one person); *Martin v. State,* (1978) 176 Ind.App. 99, 374 N.E.2d 543 (possession of three different drugs is single possession offense). However, separate offenses were found when a defendant robbed two employees of both the business's cash and their own personal property. *Lash v. State,* (1982) Ind., 433 N.E.2d 764 (three convictions). A similar result was reached in *McKinley v. State,* (1980) 272 Ind. 689, 400 N.E.2d 1378 (two convictions). We believe Hurst is guilty of two offenses as in *Lash, supra,* and *McKinley, supra.*

The whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the particular crime involved. *See, e.g., Duncan v. State, supra* ("dealing" in IND.CODE 35–24.1–4.1–2 (1976) is a single sales transaction, and sale involving several controlled substances is

only one offense); *Isaac v. State,* (1982) Ind.App., 439 N.E.2d 1193 ("another person" in IND.CODE 35–30–10.1–2 (repealed 1983 Ind.Acts, P.L. 311 § 49) (now IND. CODE 35–49–3–1) is merely minimum number of viewers required for offense of exhibiting obscene matter and is not the limit, the term being merely descriptive, and not a characteristic, of the offense); *Bell v. United States,* (1955) 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (in Mann Act violation, interstate transportation is the focus, and only one offense is committed even though two women were involved in same act of transport). We therefore must examine our statute to determine what exactly the proscribed behavior encompasses and thus whether Hurst violated it once or twice.

IND.CODE 35–48–4–2 reads:

"A person who:

(1) knowingly or intentionally manufactures or delivers a controlled substance, pure or adulterated, classified in schedule I, II, or III ...

commits dealing in a schedule I, II, or III controlled substance, a class B felony."

IC 35–48–4–2 is the recently evolved version of IC 35–24.1–4.1–2, but still includes the basic term "dealing," which was defined as a single sales transaction in *Duncan v. State, supra.* From this, we have decided the involvement of two buyers here creates more than one sales transaction and thereby creates multiple offenses. Each buyer was a different principal who individually purchased and was individually allotted a different amount of LSD even though both sales took place at the same time and in the same location from the same seller. There was more than a "single intent and design" involved here, and Hurst was properly convicted of two offenses. *See U.S. v. Noel,* (6th Cir.1974) 490 F.2d 89 (individual representing two buyers was sufficient for single seller's two convictions); *People v. Hill,* (1978) 56 Ill. App.3d 510, 14 Ill.Dec. 204, 371 N.E.2d 1257; *Porter v. State,* (1982) Ind.App., 440 N.E.2d 690 (two undercover officers each purchased obscene materials at same time from same person and court held two of-

fenses were committed); *see also U.S. v. Oliver,* (7th Cir.1982) 683 F.2d 224 (illegal possession of both revolver and automatic constituted two offenses because acquired at different times); *U.S. v. Horton,* (7th Cir.1982) 676 F.2d 1165, *cert. denied* (1983) 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (defendant properly convicted of two counts of extortionate practices even though he threatened both victims at same time and place); *U.S. v. Kidding,* (7th Cir.) 560 F.2d 1303, *cert. denied Brown v. U.S.,* (1977) 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (tractor and trailer stolen as single unit properly supported two convictions, thefts of "vehicle" and "good," because did not remain as single unit); *U.S. v. Mehrmanesh,* (9th Cir.1982) 682 F.2d 1303 (delivery of sample of heroin and delivery of rest of shipment not a single transaction); *Randall v. State,* (1983) Ind., 455 N.E.2d 916 (confinement is personal crime and when committed against five individuals, supports five convictions).

*Sentencing*

■ Because sentencing error may be raised at any time, *Lewandoski v. State,* 271 Ind. 4, 389 N.E.2d 706, we *sua sponte* address a problem appearing clearly in the record. Hurst was sentenced to consecutive ten-year terms upon his two convictions, and we do not know why.

Our supreme court has repeatedly stated that, when a trial court exercises its discretion to increase or decrease a basic sentence or to impose consecutive sentences, the appropriate aggravating or mitigating factors supporting its decision must be in the record. *Lang v. State,* (1984) Ind., 461 N.E.2d 1110; *Washington v. State,* (1981) Ind., 422 N.E.2d 1218. Thus, in order to justify imposing consecutive sentences on Hurst, "at the very least the judge must be able to articulate facts in the case that support a finding of the presence of at least one of the aggravating circumstances listed in [IND.CODE 35–4.1–4–7 (West 1978) (now at IND.CODE 35–38–1–7)] ...." *Washington v. State,* 422 N.E.2d at 1221. We are hard-pressed to find compliance with this mandate in the instant case.

During the sentencing hearing, defense counsel and the prosecutor made statements regarding what they believed would be appropriate sanctions. The prosecutor agitated for an increase in the presumptive ten-year sentence (*see* IND.CODE 35–50–2–5, class B felony), arguing Hurst was a major drug supplier. The trial court himself acknowledged the inference from certain evidence that Hurst was indeed "a big dealer." However, when he imposed the first sentence on one of the convictions, he specifically stated, "I don't see any statutory aggravating circumstances over and above the sale itself to increase the sentence." Record, p. 255. The court proceeded to pronounce a ten-year sentence for one conviction then another ten years for the other, to be served afterward. The trial court erred.

The aggravating circumstances supporting the enhancement of an individual sentence are the same factors required before consecutive sentencing. *See* IC 35–4.1–4–7 (IC 35–38–1–7).[1] The trial court here especially found no aggravating circumstances for an *increase* in penalty. Such finding by the trial court requires us to conclude there was no statutory basis for Hurst's consecutive sentences.[2] The court's sentencing was error, and we remand for a correction of sentencing, the ten-year terms to run concurrently. In all other things, the judgment is affirmed.

Affirmed and remanded.

CONOVER, P.J., and GARRARD, J., concur.

---

1. "(c) The court may consider these factors as aggravating circumstances *or as favoring imposing consecutive terms of imprisonment....*" IND.CODE 35–4.1–4–7 (West 1978) (Emphasis added.)

2. Had there been no finding whatsoever, we would have been constrained to remand this case to the trial court for submission of a statement of aggravating factors with an alternate order to impose the presumptive sentence if the judge could not comply. *See, e.g., Staples v. State,* (1983) Ind., 452 N.E.2d 985.