**Nicholas A. RADICK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 56A05–0608–CR–428.

Court of Appeals of Indiana.

March 27, 2007.

Samantha M. Joslyn, Demotte, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Nicholas A. Radick appeals his convictions for operating a vehicle while intoxicated causing death as a class C felony[1] and operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor.[2] Radick raises one issue, which we restate as whether his conviction for operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor is inconsistent with his conviction for operating a vehicle while intoxicated causing death as a class C felony. We affirm.

The relevant facts follow. On April 19, 2003, Radick was driving a car involved in a one-vehicle accident in which his friend, Joseph Hedger, was killed. The first officer on the scene smelled alcohol on Radick's breath and saw that Radick had watery eyes and slurred speech. Radick told the officer that he had been drinking and that he was driving the vehicle. Radick also told paramedics that he had consumed six beers and smoked marijuana. Lab tests taken at the hospital revealed that Radick had THC, the active ingredient in marijuana, and alcohol in his system. Radick also admitted to the emergency room physician that he had used alcohol and marijuana.

The State charged Radick with operating a vehicle while intoxicated causing

---

1. Ind.Code § 9–30–5–5 (Supp.2003) (subsequently amended by Pub.L. No. 76–2004, § 4 (eff. July 1, 2004); Pub.L. No. 82–2004, § 2 (eff. July 1, 2004); and Pub.L. No. 2–2005, § 36 (eff. April 25, 2005)).

2. Ind.Code § 9–30–5–1 (2004).

death as a class C felony and operating a vehicle with a controlled substance listed in Schedule I or II causing death as a class C felony.[3] A jury found him guilty of operating a vehicle while intoxicated causing death as a class C felony and a lesser included offense of operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor. The trial court sentenced Radick to six years for the operating a vehicle while intoxicated conviction and sixty days for the operating a vehicle with a controlled substance conviction and ordered that the sentences be served concurrently.

■■■ The issue on appeal is whether Radick's conviction for operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor is inconsistent with his conviction for operating a vehicle while intoxicated causing death as a class C felony. When this Court reviews a claim of inconsistent jury verdicts, "we will take corrective action only when the verdicts are extremely contradictory and irreconcilable." *Powell v. State*, 769 N.E.2d 1128, 1131 (Ind.2002), *reh'g denied*. A jury's verdict may be inconsistent or even illogical but nevertheless permissible if it is supported by sufficient evidence. *Id.* In resolving such a claim, we neither interpret nor speculate about the thought process or motivation of the jury in reaching its verdict. *Id.*

Radick argues that if the jury "believed the testimony that [Radick] was intoxicated and also had THC in his system" and

found that "the way in which [Radick] was driving caused [Hedger's] death," the jury should have found him guilty of both class C felonies. According to Radick, the verdicts were inconsistent, and he requests a new trial on the charges.

■ In *Abney v. State*, 766 N.E.2d 1175, 1177 (Ind.2002), the Indiana Supreme Court clarified that the State is not required to prove that the defendant's intoxication directly and proximately caused the resulting injury. However, the State is required to prove that the defendant's operation of a motor vehicle while intoxicated was a "substantial cause" of the resulting death, not merely a "contributing cause." 766 N.E.2d at 1177–1178. Consequently, Radick is correct that the jury should have found him guilty of both class C felonies if it found that he was driving while intoxicated, that he was driving with THC in his system, and that the way in which he was driving caused Hedger's death.[4] The State concedes that "[t]he illogical nature of the verdicts appears to be the result of the jury going beyond the State's burden and [attributing] the cause of Hedger's death to Radick's intoxication rather than just the act of driving." Appellee's Brief at 5. However, as noted above, a jury's verdict may be inconsistent or even illogical but nevertheless permissible if it is supported by sufficient evidence. *Powell*, 769 N.E.2d at 1131; *see also Hodge v. State*, 688 N.E.2d 1246, 1248–49 (Ind.1997) (when the trial results in acquittal on some

---

3. Ind.Code § 9–30–5–5.

4. We note that, had the jury found Radick guilty of both operating a vehicle while intoxicated causing death as a class C felony and operating a vehicle with a controlled substance listed in Schedule I or II causing death as a class C felony, the trial court could not have entered judgment of conviction on both verdicts due to double jeopardy principles. The Indiana Supreme Court has held that

"[e]nhancement of one offense for the very same harm as another is not permissible." *Carrico v. State*, 775 N.E.2d 312, 314 (Ind. 2002); *see also Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002) (holding that "where a burglary conviction is elevated to a Class A felony based on the same bodily injury that forms the basis of a Class B robbery conviction, the two cannot stand").

charges and convictions on others, verdicts ordinarily will survive a claim of inconsistency when the evidence is sufficient to support convictions). Despite the inconsistency in the verdicts, both of the verdicts are supported by sufficient evidence.

■ The offense of operating a vehicle while intoxicated resulting in death as a class C felony is governed by Ind.Code § 9–30–5–5(a), which at the time of Radick's offense provided:

A person who causes the death of another person when operating a motor vehicle:

\* \* \* \* \* \*

(2) with a controlled substance listed in schedule I or II of IC 35–48–2 or its metabolite in the person's body; or

(3) while intoxicated;

commits a Class C felony.

The State presented evidence that Radick was operating the vehicle at a high rate of speed when the accident occurred. Hedger died as a result of the accident. When officers arrived on the scene, Radick smelled of alcohol, had watery eyes and slurred speech, and admitted to the officers, paramedics, and emergency room physician that he had consumed alcohol. We conclude that the State presented sufficient evidence for the jury to find Radick guilty beyond a reasonable doubt of operating a vehicle while intoxicated resulting in death as a class C felony. *See, e.g., Ballinger v. State,* 717 N.E.2d 939, 943 (Ind.Ct.App.1999) (holding that the evidence was sufficient to sustain the defendant's conviction for operating a vehicle while intoxicated causing death as a class C felony).

■ Similarly, the evidence is sufficient to sustain Radick's conviction for operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor. The offense of operating a vehi-

cle with a controlled substance listed in Schedule I or II as a class C misdemeanor is governed by Ind.Code § 9–30–5–1(c), which is a lesser included offense of Ind. Code § 9–30–5–5 and provides: "A person who operates a vehicle with a controlled substance listed in schedule I or II of IC 35–48–2 or its metabolite in the person's body commits a Class C misdemeanor." The State presented evidence that Radick operated the vehicle with THC, the active ingredient in marijuana, in his system. Marijuana is a controlled substance listed in schedule I of Ind.Code § 35–48–2–4. We conclude that the evidence is sufficient to sustain Radick's conviction for operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor.

Despite any inconsistency in the verdicts, the convictions are permissible because they are supported by sufficient evidence. *See, e.g., Slate v. State,* 798 N.E.2d 510, 519–520 (Ind.Ct.App.2003) (holding that the jury's guilty verdict for the offense of operating a vehicle while intoxicated as a Class A misdemeanor was not wholly inconsistent with its acquittal of the defendant on the charge of public intoxication).

For the foregoing reasons, we affirm Radick's convictions for operating a vehicle while intoxicated causing death as a class C felony and operating a vehicle with a controlled substance listed in Schedule I or II as a class C misdemeanor.

Affirmed.

CRONE, J. concurs.

SULLIVAN, J. dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The jury did not find Radick guilty of causing death with respect to the two

charged offenses. There was only one death as a result of Radick's conduct. The causing-death element of the charged offense of operating with a controlled substance was eliminated by the jury verdict, thereby averting one double jeopardy problem.[5] However, that fact does not cure what I perceive to be a separate double jeopardy impediment to the two convictions.

One of the convictions here involved operating a vehicle while intoxicated. The other involved operating a vehicle with a controlled substance in the operator's body.

These two convictions, in my view, violate double jeopardy principles. In such instances the violations constitute fundamental error and are to be noted by this court *sua sponte. Haggard v. State,* 445 N.E.2d 969, 971 (Ind.1983); *Wilder v. State,* 813 N.E.2d 788, 793–94 (Ind.Ct.App. 2004), *trans. denied,* (disapproved of on other grounds).

Indiana Code § 9–30–5–5(b) (Burns Code Ed. Repl.2004), amended in relevant part in 1994, provides the following:

"(b) A person at least twenty-one (21) years of age who causes the death of another person when operating a motor vehicle:

(1) with an alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per:

(A) one hundred (100) milliliters of the person's blood; or

(B) two hundred ten (210) liters of the person's breath; or

(2) with a controlled substance listed in schedule I or II of IC 35–48–4 or its metabolite in the person's blood;

commits a Class B felony.

(c) A person who violates subsection ... (b) commits a separate offense for each person whose death is caused by the violation of subsection ... (b)."

It is clear under the current law that a person may be convicted multiple times under this statute, but only as that relates to the number of deaths he causes. Prior to 1994, the relevant statutes (then I.C. §§ 9–11–2–1, 9–11–2–2 and 9–11–2–5) focused upon the act of operating a motor vehicle in an impaired condition rather than upon the results of that conduct, i.e. bodily injury or death. During the time frame in which the former statutes were in effect, several case decisions in analogous situations stated in effect that "[t]he number of victims does not increase the number of crimes." *Dupin v. State,* 524 N.E.2d 329, 332 (Ind.Ct.App.1988) (Sullivan J., concurring); *see also Hurst v. State,* 464 N.E.2d 19, 21–22 (Ind.Ct.App. 1984). This focus, of course, was dependent upon how the particular crime was defined and how the elements of the crime were set forth in the statute.[6]

Be that as it may, with regard to vehicle operation offenses while intoxicated either by alcohol in the blood or by a controlled substance or substances, the 1994 legislative amendment as reflected by I.C. § 9–30–5–5 (Burns Code Ed. Supp.1994) changed the statutory focus from the act of

**5.** In footnote 4, the majority opinion recognizes that judgments of conviction could not have been appropriately entered if the jury had returned guilty verdicts upon both offenses as charged.

**6.** Examples of situations in which multiple victims permissibly resulted in multiple convictions are represented by *Johnson v. State,*

455 N.E.2d 932, 937 (Ind.1983), in which two separate and distinct acts were directed at two separate and distinct victims, and *Randall v. State,* 455 N.E.2d 916, 931–32 (Ind.1983), in which five separate confinements took place because there was a "personal crime" as to each of the five victims.

driving while intoxicated to the act of causing the death of another. Even more specifically, the 1994 amendment clearly stated that a person violating the statute "commits a separate offense for each person whose death is caused...." It is thus clear that the General Assembly changed the law in order to permit multiple convictions for multiple victims.

It must be emphasized that in the case before us we have only one victim, not multiple victims, which sustains only one conviction, not two. I believe it is improper to extend the legislature's provision for multiple convictions, which are expressly intended to reflect multiple victims, to multiple intoxicants as well. Indeed, the General Assembly's statutory amendment changing the focus of the statute from the single act of driving while intoxicated to the fact that a death or deaths were caused by the intoxicated operation of the vehicle supports my position: as revised, the crime at issue is determined only according to its effect on the victim. If Radick had killed more than one person, most certainly he could be convicted separately for each victim. But the fact of killing one person is unaffected by the perpetrator's degree of intoxication or the number or classification of the particular intoxicants leading to the defendant's impaired condition.

Such conclusion is supported by *Duncan v. State*, 274 Ind. 457, 412 N.E.2d 770 (Ind.1980). In *Duncan* the Supreme Court addressed the question of whether a defendant could be convicted seven times for dealing, in two separate transactions, seven different controlled substances, all of which were in violation of the same Indiana Code provision, § 35-24.1-4.1-2 (Burns Code Ed. Repl.1975), which is current Indiana Code § 35-48-4-2 (Burns Code Ed. Repl.2004). *See Hurst*, 464 N.E.2d at 22. The court held that the defendant could only be convicted twice, not seven times, for the two separate drug transactions he was involved in, regardless of the fact that seven different substances were involved. In reaching its conclusion the Supreme Court stated the following:

> "It is our opinion, therefore, that a single sales transaction between the same principals at the same time and place which violates a single statutory provision [7] does not justify conviction of a sentence for separate crimes even though more than one controlled substance is involved."

*Duncan*, 274 Ind. at 464, 412 N.E.2d at 775-76. The Court supported its conclusion by observing that the statute at issue was entitled "Unlawful dealing on [sic] a controlled schedule I, II, or III substance," and did not "specifically state that the penalties [were] intended to be additive when different substances [were] involved in a single transaction." *Id.*

The same reasoning applies to the case at hand. The statute under which Radick

---

7. Indiana Code § 35-24.1-4.1-2 stated the following in pertinent part:

> "(a) Except as authorized by this article ..., a person is guilty of unlawful dealing in a schedule I, II or III controlled substance if he:
>   (1) knowingly manufactures or delivers a controlled substance, pure or adulterated, classified in schedule I, II or III, except marijuana or hashish; or
>   (2) possesses with intent to manufacture or deliver a controlled substance, pure or

adulterated, classified in schedule I, II or III, except marijuana or hashish."

While this statute is arguably distinguishable from I.C. § 9-30-5-5 because it provides for multiple controlled substances in the same subsection, in significant part it treats multiple substances in the disjunctive, just as § 9-30-5-5. does. In light of the statutes' similar treatment of multiple controlled substances in the disjunctive, any difference in their format does not appear to be material.

was charged, I.C. § 9–30–5–5, addresses what appears to be the single violation of causing death, as is indicated by its title, "Classification of offense; death." Further, the statute specifically indicates the circumstances under which penalties are intended to be additive (multiple deaths under subsection (c)), and such circumstances do not include using more than one of the enumerated substances. Given the facts that Radick was involved in one vehicle car crash "transaction," that such "transaction" involved one victim and occurred at one time and place, and that this "transaction" violated a single statutory provision, under the reasoning in *Duncan,* Radick may not be convicted twice under I.C. § 9–30–5–5 for causing one death, in spite of the fact that he was under the influence of more than one substance. Indeed, if a defendant's convictions under a statute aimed at criminalizing drug dealing may not be multiplied to reflect the various drugs he deals, it would seem even less likely that a defendant's conviction under a statute criminalizing the entirely separate topic of causing death by motor vehicle could reflect the number of drugs involved.

Of further note is the recent case *Mathews v. State,* 849 N.E.2d 578, 580 (Ind. 2006), wherein our Supreme Court interpreted the Indiana arson statute to provide that "damaging one property by fire is only one arson, even if the fire produces multiple consequences, any one of which is sufficient to constitute arson." In arriving at this conclusion, the Supreme Court reasoned that the arson statute criminalized the act of damaging property, not injuring people, and that "the structure of the arson statute dictates that damaging property owned by only one owner by the same use of fire, explosive, or destructive device is only one B felony arson, whether it falls under one or more than one of the alternatives in section 1(a)." *Id.* at 586–87. Un-

der a similar statutory construction, I.C. § 9–30–5–5(b) dictates that causing the death of a person while operating a motor vehicle is a single Class B felony, whether it falls under one or more than one of the intoxication alternatives in section 5(b).