



FILED

Aug 18 2020, 2:19 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-CR-527

## Alain Kiiwon Powell, Jr.,

*Appellant (Defendant),*

—v—

## State of Indiana,

*Appellee (Plaintiff).*

---

Argued: November 13, 2019 | Decided: August 18, 2020

Appeal from the Tippecanoe Circuit Court,
No. 79C01-1703-F1-4
The Honorable Sean M. Persin, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-CR-1812

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

Most everyone would agree that intentionally shooting at and killing two persons (one immediately after the other) amounts to two separate murders. Reasonable persons would also likely conclude that robbing a person and then brutally beating and injuring that person (all in the same encounter) amount to two separate criminal acts: robbery and aggravated battery. Other scenarios, however, are less clear. Is the baker who sells four loaves of bread on Sunday subject to four counts of violating the "blue law" or only one? Does the theft of a single package in which several articles of property belong to multiple persons amount to one offense or multiple offenses? Does every punch thrown upon a single victim amount to a separate act of battery? Are two pulls of the trigger one attempted murder or two? Does it matter if the defendant aimed at two victims rather than one? What if he had aimed at the same person but on different days and at different locations?[1]

The answer to these questions depends on whether the applicable statute permits the division or fragmentation of a defendant's criminal conduct into distinct "units of prosecution." If the statute defines a separate offense for certain discrete acts (*e.g.*, each loaf of bread sold or each victim harmed) within that course of conduct, the separate charges (and corresponding convictions) may stand. But if the statute fixes no separate penalty for each of these acts, and unless those acts are

---

[1] *See Crepps v. Durden*, 98 Eng. Rep. 1283, 1287 (1777) (holding that "[t]here can be but one entire offence on one and the same day," regardless of the number of loaves Crepps sold or the number of customers to whom he sold those loaves); *Furnace v. State*, 153 Ind. 93, 94, 54 N.E. 441, 441 (1899) (explaining that, under the single-larceny doctrine, "the stealing of several articles of property at one and the same time, as a part of the same transaction, can constitute but one offense against the state, notwithstanding the fact that such articles belonged to several owners"); *Gomez v. State*, 56 N.E.3d 697, 704 (Ind. Ct. App. 2016) (concluding that defendant's actions of grabbing the victim, slamming her into a wall, and pulling her hair "were sufficiently compressed in terms of time, place, singleness of purpose, and continuity of action" to support a single charge of Class A misdemeanor domestic battery rather than three); Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1817 (1997) (describing the multiple attempted-murder scenarios).

sufficiently distinct "in terms of time, place, [and] singleness of purpose," then a court may impose only a single conviction.

The defendant here, during an escalating confrontation, fired five to six shots in rapid succession at two victims sitting in an adjacent vehicle, seriously injuring one of them. In these circumstances, may a court convict on one count of attempted murder (for the single act of shooting) or two (one for each victim)? While our attempted-murder statute contains no clear unit of prosecution, we find sufficient evidence of the defendant's dual purpose in firing his weapon: intent to kill both victims. Accordingly, we hold that the defendant's actions, despite their proximity in space and time, amount to two distinct, chargeable offenses.

## Facts and Procedural History

In March 2017, Travis Nichols purchased a Ford Taurus from Tyler Howard. When Howard subsequently borrowed the car and failed to return it, Travis and his companions drove to Howard's house in an apparent attempt to reclaim the vehicle. Expecting an altercation, Howard summoned a group of friends, among whom included Alain Powell, Jr. Upon arriving at the house, Powell found Travis parked just outside, sitting in the driver's seat of a black Cadillac. Travis's wife, Davyn Nichols, sat in the front passenger seat, while a third person, Troy Clements, occupied the rear. Powell pulled up to the car's front passenger window and, while the parties exchanged heated words, began loading a gun. As Travis threw the car into gear and started pulling away, Powell fired five to six shots in rapid succession at the vehicle. Travis and Clements emerged from the chaos virtually unscathed. Davyn, on the other hand, having been struck by two bullets, barely escaped with her life.

The State charged Powell with three counts of attempted murder (one count for each victim), criminal recklessness, carrying a handgun without a license, and several counts of battery. The jury found Powell guilty as

charged except for the attempted murder of Clements.[2] The trial court entered judgment of conviction and sentenced Powell to an aggregate term of sixty-four years (two consecutive thirty-two-year terms for each attempted murder, along with a concurrent sentence of five years for the unlicensed carrying of a handgun).

On appeal, Powell argued that his two attempted-murder convictions violated the state constitutional protection against double jeopardy, and that there was insufficient evidence showing his intent to kill Davyn.[3]

In a unanimous opinion, the Court of Appeals affirmed in part and reversed in part. *Powell v. State*, 127 N.E.3d 1280 (Ind. Ct. App. 2019). Citing the "ongoing animosity between the parties," and the fact that Powell had fired multiple times at Davyn's side of the car, the panel found sufficient evidence to support both attempted-murder convictions. *Id.* at 1283. But with "no additional evidence that Powell intended to kill a specific victim or took additional steps to kill a specific victim," the panel concluded that both convictions violated double jeopardy. *Id.* at 1285. To remedy this violation, the panel vacated Powell's attempted-murder conviction for Davyn. *Id.*

The State petitioned for transfer, which we granted, thus vacating the Court of Appeals opinion. *See* Ind. Appellate Rule 58(A).

---

[2] According to both Powell's counsel and the State at oral argument, the evidence suggested that Powell was likely unaware of Clements' presence in the back seat. Oral Arg. at 12:33–45, 19:08–33. Clements himself testified that his tinted window was up and that he was unable to see into the other car. Tr. Vol. II, p. 87. *See also* Ex. 100 (showing the rear passenger tinted window).

[3] Powell also argued (on appeal and again on transfer) that because transferred intent does not apply to attempted murder, the trial court erred in giving the State's proposed jury instruction on that issue. Under the doctrine of transferred intent, "a defendant's intent to kill one person is transferred when, by mistake or inadvertence, the defendant kills a third person" and, despite his intent to kill another, "the defendant may be found guilty of the murder of the person who was killed." *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998). Because we find sufficient evidence of Powell's intent to kill both victims (*i.e.*, because there was no "mistake or inadvertence"), we need not rely on transferred intent to affirm his convictions on both counts.

# Standard of Review

We apply a de novo standard of review to questions of statutory law. *Johnson v. State*, 87 N.E.3d 471, 472 (Ind. 2017). Sufficiency-of-the-evidence claims, on the other hand, warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility. *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind. 1994). Rather, we consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018). We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

# Discussion and Decision

The thrust of the parties' arguments focuses on Powell's act of firing multiple shots at Travis's car and whether his actions warrant separate attempted-murder convictions. Powell argues that double jeopardy prohibits his separate convictions based on his single act of shooting. The State, on the other hand, contends that, when separate victims are involved, there is no double jeopardy violation. Each pull of the trigger amounted to "separate acts" designed to kill each person, the State insists, and the fact that Powell "unleashed his violence at multiple people close in time and space does not make it a single crime." Appellee's Br. at 21, 22; Reply in Support of Trans. at 4.

We agree with the State that the separate victims here warrant Powell's dual convictions, but the reasoning through which we reach that decision calls for careful explanation.

In part I of this opinion, we lay out the basic framework for analyzing claims of multiplicity—a branch of substantive double jeopardy based on

"the charging of a single offense in several counts."[4] *Gerberding v. United States*, 471 F.2d 55, 58 (8th Cir. 1973). *See also Taylor v. State*, 929 N.E.2d 912, 920 (Ind. Ct. App. 2010) (using the same term in the same context). In Part II, we apply this analytical framework to Powell, ultimately concluding that the separate attempted-murder convictions may stand.

## I. Whether the State may charge a single offense in multiple counts depends on the crime's statutory definition and the defendant's actions.

Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries. *Wadle v. State*, --- N.E.3d --- (Ind. 2020) (slip op. at 22–23). Our decision today in *Wadle* implicates the former scenario; this case implicates the latter. The question here is not whether one offense is included in the other (attempted murder is clearly the same as attempted murder). *See Hurst v. State*, 464 N.E.2d 19, 21 (Ind. Ct. App. 1984). Instead, we ask whether "the same act may be twice punished" as "two counts of the **same** offense."[5] *See Kelly v. State*, 527 N.E.2d 1148, 1154 (Ind. Ct. App. 1988), *aff'd*, 539 N.E.2d 25, 26 (Ind. 1989).

Our legislature possesses the inherent authority, subject to certain constitutional limitations, to define crimes and fix punishments. *State v. Clark*, 247 Ind. 490, 495, 217 N.E.2d 588, 590–91 (1966). This prerogative

---

[4] Multiplicity is distinguishable from "duplicity," which arises when "two or more distinct offenses are charged in the same count of an indictment." *Woods v. State*, 250 Ind. 132, 140, 235 N.E.2d 479, 484 (1968).

[5] While our courts have generally recognized this analytical distinction (as the cases cited throughout this opinion illustrate), there are a few exceptions. *See, e.g., Johnson v. State*, 455 N.E.2d 932, 937 (Ind. 1983) (explaining that the "test for determining whether or not separate sentences may be imposed" for two counts of attempted murder, one for each victim, "is whether the charged offenses are themselves the same"); *Henderson v. State*, 534 N.E.2d 1105, 1106 (Ind. 1989) (citing *Johnson* to affirm defendant's two attempted-battery convictions).

extends to defining whether a single statutory offense will "subsist for a definite period or cover successive, similar occurrences."[6] *Hines v. State*, 30 N.E.3d 1216, 1220 (Ind. 2015). In resolving a claim of multiplicity, our task is to determine whether the statute permits punishment for a single course of criminal conduct or for certain discrete acts—the "successive, similar occurrences"—within that course of conduct. *Id.*; *Taylor*, 929 N.E.2d at 920. Put differently, we ask whether—and to what extent—the applicable statute permits the fragmentation of a defendant's criminal act into distinct "units of prosecution."[7] Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81, 111–12. *See also Bell v. United States*, 349 U.S. 81, 82–83 (1955) (the legislative branch is responsible for defining the proper "unit of prosecution").

This inquiry involves a two-step process.

First, we review the text of the statute itself. If the statute, whether expressly or by judicial construction, indicates a unit of prosecution, then

---

[6] For example, a person who, without the proper permit, conducts a "horse racing meeting at which pari-mutuel wagering is permitted" commits a separate offense "[e]ach day of racing." Ind. Code § 4-31-13-3 (2019). "Each transaction" by a real estate appraiser who practices without a license or certification "constitutes a separate offense." I.C. § 25-34.1-8-12(a). "Each year" during which a public-cemetery owner and manager neglects its maintenance duties constitutes a "separate offense." I.C. §§ 23-14-74-1, -2. And, under our arson statute, a person who knowingly or intentionally damages property by fire or by explosive means "commits a separate offense for each person who suffers a bodily injury or serious bodily injury." I.C. § 35-43-1-1.

[7] Whereas the "elements of an offense define what must be proved to convict a defendant of a crime," a criminal statute's "unit of prosecution defines **how many** offenses the defendant has committed." *United States v. Rentz*, 777 F.3d 1105, 1117 (10th Cir. 2015) (Matheson, J., concurring).

we follow the legislature's guidance and our analysis is complete.[8] *See Hurst*, 464 N.E.2d at 21 (whether "multiple offenses of the same statute are committed during a single transaction" depends "on the definition of the particular crime involved"). But if the statute is ambiguous, then we proceed to the second step of our analysis.

Under this second step, a court must determine whether the facts—as presented in the charging instrument and as adduced at trial—indicate a single offense or whether they indicate distinguishable offenses. To answer this question, we ask whether the defendant's actions are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), *cited with approval by Hines*, 30 N.E.3d at 1219. If the defendant's criminal acts are sufficiently distinct, then multiple convictions may stand; but if those acts are continuous and indistinguishable, a court may impose only a single conviction.[9] *Armstead v. State*, 549 N.E.2d 400, 402 (Ind. Ct. App. 1990). Any doubt counsels "against turning a single transaction into multiple offenses." *Duncan v.*

---

[8] Even before our decision in *Wadle* to overrule the *Richardson* same-evidence test, we would still have treated Powell's claim as a matter of statutory interpretation, not as a question of constitutional dimension. *See Mathews v. State*, 849 N.E.2d 578, 580 (Ind. 2006) (resolving a unit-of-prosecution case based on "the structure of the statute, not from constitutional limitations"); *Stafford v. State*, 83 N.E.3d 721, 722 (Ind. Ct. App. 2017) (characterizing defendant's unit-of-prosecution claim as a "challenge based on statutory interpretation," rather than a "challenge based on constitutional prohibitions against double jeopardy"). *See also United States v. Cureton*, 739 F.3d 1032, 1040 (7th Cir. 2014) (noting that the issue in unit-of-prosecution cases "is one of statutory interpretation, not of constitutional reach").

[9] While there are some exceptions, *see supra*, n.6, legislatures often fail to specify the unit of prosecution, mainly to avoid creating either too broad or too narrow a rule, Jeffrey M. Chemerinsky, Note, *Counting Offenses*, 58 Duke L.J. 709, 717 (2009). So, resolution of a multiplicity claim often turns on this second step of our analysis. *See, e.g., Duncan v. State*, 274 Ind. 457, 464, 412 N.E.2d 770, 775–76 (1980) (affirming two convictions for unlawful dealing in drugs where transactions took place on separate days but concluding that, under statute articulating no distinct unit of prosecution, "a single sales transaction" involving multiple drugs "between the same principals at the same time and place" would not justify multiple convictions); *Am. Film Distribs., Inc. v. State*, 471 N.E.2d 3, 5, 6 (Ind. Ct. App. 1984) (holding that, absent "clear [statutory] intent to fix separate penalties for each obscene film shown," defendant's screening of "a single, continuous, uninterrupted exhibition of four obscene films for one admission price" warranted conviction under a single count, not four).

*State*, 274 Ind. 457, 464, 412 N.E.2d 770, 775 (1980) (quoting *Bell*, 349 U.S. at 84).

## II. While our attempted-murder statute contains no clear unit of prosecution, Powell's criminal acts indicate distinguishable offenses.

Applying our test to Powell's multiplicity claim requires us to decide two things: (1) whether the attempted-murder statute contains a distinct unit of prosecution and, if not, (2) whether Powell's firing of multiple shots indicate distinguishable offenses or whether those consecutive acts indicate a single, continuous offense.

### A. The attempted-murder statute contains no distinct unit of prosecution.

As with all questions of statutory interpretation, we first look to the statute's text, reading its terms in their plain and ordinary meaning.[10] *Prewitt v. State*, 878 N.E.2d 184, 186 (Ind. 2007). A person commits the offense of attempted murder, a Level 1 felony, when he or she, acting with the requisite culpability, "engages in conduct that constitutes a substantial step toward" the "intentional killing of another human being." Ind. Code § 35-41-5-1(a) (2014); I.C. § 35-42-1-1(1).

With no express unit of prosecution, we turn to other language in the statute to decipher its meaning.

---

[10] For purposes of our analysis here, we refer to the crime of attempted murder as a single statutory offense. Of course, the offense technically consists of two statutes. *See* I.C. § 35-42-1-1 (2014) (murder); I.C. § 35-41-5-1 (attempt). But it exists only by reading one statute "in conjunction with" the other. *Kee v. State*, 438 N.E.2d 993, 994 (Ind. 1982).

### 1. The Framework for Statutory Analysis

In determining whether a single criminal statute permits multiple punishments for multiple victims, Indiana courts (as with other jurisdictions) often distinguish conduct-based statutes from result-based statutes. *Stafford v. State*, 83 N.E.3d 721, 724 (Ind. Ct. App. 2017). *See also* Wayne R. LaFave, *Variations in Definitions of Crimes*, 1 Substantive Crim. L. § 1.2(c) (3d ed. 2018) (discussing the same).[11] A **conduct**-based statute, under our criminal code, consists of an offense defined by certain actions or behavior (*e.g.*, operating a vehicle) and the presence of an attendant circumstance (*e.g.*, intoxication). *Stafford*, 83 N.E.3d at 724 (quoting *Kelly*, 527 N.E.2d at 1155). Under these statutes, the crime is complete once the offender engages in the prohibited conduct, **regardless** of whether that conduct produces a specific result (*e.g.*, multiple victims). *Id.* (quoting *Kelly*, 527 N.E.2d at 1155). The focus—or "gravamen"—of the statutory offense is the defendant's actions, not the consequences of those actions. *Id.* at 723, 724 (quoting *Kelly*, 527 N.E.2d at 1155). To be sure, a specific result or consequence (*e.g.*, death or serious bodily injury) may **enhance** the penalty imposed. *Mathews v. State*, 849 N.E.2d 578, 582 (Ind. 2006). But "multiple consequences do not establish multiple crimes," since the crime may still be committed without the consequence. *Id. See also Stafford*, 83 N.E.3d at 724 (quoting *Kelly*, 527 N.E.2d at 1155) ("The multiple egregious results do not increase the number of crimes, only the penalty."). Indeed, under a conduct-based statute, "a single discrete incident can be the basis for only one conviction, no matter how many individuals are harmed." *Paquette v. State*, 101 N.E.3d 234, 239 (Ind. 2018).

---

[11] Federal and state courts alike apply variations of this analytical framework. *See, e.g.*, *Rentz*, 777 F.3d at 1110 (observing that "the statute's operative verb" focuses the court's "attention on how many times the defendant performed [the proscribed] act"); *United States v. Prestenbach*, 230 F.3d 780, 783 (5th Cir. 2000) (analyzing only the "physical conduct of the defendant" since the statute described the number of victims in ambiguous terms); *State v. Ramirez*, 409 P.3d 902, 916–17 (N.M. 2017) (comparing state child-abuse statute's emphasis on both defendant's conduct and multiple victims); *Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011) (using similar analysis).

A **result**-based statute, on the other hand, consists of an offense defined by the defendant's actions **and** the results or consequences of those actions. "In crimes such as murder, manslaughter, battery and reckless homicide, the gravamen of the offense is causing the death or injury of another person, i.e., the result is part of the definition of the crime." *Kelly*, 527 N.E.2d at 1155. In other words, "the resulting death, injury or [offensive] touching is an element of the crime." *Mathews*, 849 N.E.2d at 582. And that crime is complete so long as "the required actus reus and mental state are present." *Id.* Under these statutes, then, "where several deaths or injuries occur in the course of a single incident," the prohibited offense has been perpetrated "several times over." *Kelly*, 527 N.E.2d at 1155. "The separate victims represent different offenses because conduct has been directed at each particular victim."[12] *Id.*

In short, crimes defined by conduct (rather than by consequence) permit only a single conviction (with multiple consequences resulting in enhanced penalties, not multiple crimes). But crimes defined by consequence (rather than by conduct) permit multiple convictions when multiple consequences flow from a single criminal act. With these principles in mind, we now turn to our attempted-murder statute.

## 2. The Analytical Framework Applied

We first observe that the statute speaks nothing of a specific consequence or result. Rather, the crime is complete when the defendant, acting with the requisite culpability, "engages in conduct that constitutes a substantial step toward" committing murder, regardless of whether those actions result in actual harm to the victim or victims. I.C. § 35-41-5-1(a); I.C. § 35-42-1-1(1). This reading of the statute finds support in our case

---

[12] Our research reveals at least one case in conflict with this rule. In *Clem v. State*, this Court held that the killing of two or more persons by the same act amounts to a single offense. 42 Ind. 420, 429 (1873). "Where, by the discharge of a fire-arm, or a stroke of the same instrument," the Court explained, "an injury is inflicted upon two or more persons, or their death is produced, there is but one crime committed." *Id.* Considering our more recent precedent, we deem *Clem* an outlier, and thus expressly overrule that case.

law. *See Zickefoose v. State*, 270 Ind. 618, 623, 388 N.E.2d 507, 510 (1979) (interpreting the attempt statute as focusing not on "the result of the conduct" but rather "on the substantial step that the defendant has completed"); *Wethington v. State*, 655 N.E.2d 91, 96 (Ind. Ct. App. 1995) (noting that it makes no difference "whether the act, the substantial step taken toward the commission of murder, results in any injury whatsoever, so long as it is coupled with the intent to kill").

Based on this precedent, it's reasonable to conclude that attempted murder is a conduct-based crime—a crime in which "a single discrete incident can be the basis for only one conviction," no matter the number of victims. *See Paquette*, 101 N.E.3d at 239. *Accord Kelly*, 527 N.E.2d at 1155 (OWI is a completed crime when the intoxicated person operates the vehicle, even if no harm results); *Scuro v. State*, 849 N.E.2d 682, 687 (Ind. Ct. App. 2006) (holding that, because the statute focused on the defendant's actions rather than the harm to each victim, "a defendant may not be convicted of more than one count of dissemination of matter harmful to minors based on one occurrence, even if there was more than one victim").

Still, other interpretations of the statute pull us in the opposite direction. Despite the lack of a specific result or consequence, the statute clearly contemplates a victim (or potential victim) by use of the direct object "another human being." And by referring to the victim in the singular, this language suggests that **each** victim in an attempted murder calls for separate punishment. Our courts have held as much under different statutes. *See, e.g.*, *Brown v. State*, 912 N.E.2d 881, 896 (Ind. Ct. App. 2009) (holding that, under the child pornography statute, the listing of objects in the singular indicates a legislative intent to criminalize each possession of child pornography as a distinct violation).

To be sure, a reference in the singular to the statute's direct object doesn't always indicate a clear intent to impose separate punishments for each corresponding victim. By the legislature's own rules, a statute's use of language in the singular "may be also applied to the plural of persons and things." I.C. § 1-1-4-1(3) (2019). *See also* Off. of Code Revision, Legis. Servs. Agency, *Drafting Manual for the Indiana General Assembly* 10 (2012),

http://iga.in.gov/legislative/2020/publications/bill_drafting_manual/#docu ment-ae6c0119 [https://perma.cc/Q44J-JKUZ] (urging use of the "singular instead of the plural, because singular words apply to several persons or things as well as to one person or thing"). But had the legislature instead used "human beings" or "any human being," the statute arguably would have contemplated only a single offense despite harm to multiple victims. *See Mathews*, 849 N.E.2d at 585 (noting that, in defining felony arson, the "legislature chose to use the phrase 'endanger human life' and not 'endanger a person,'" suggesting that "endangerment of multiple persons without more, entails no additional consequences beyond endangerment of a single person").

The statute's contemplation of a victim, whether actual or potential, suggests that attempted murder is a result-based crime: rather than simply showing the defendant intentionally committed criminal conduct that could have resulted in death, the State must show that the defendant intended for his conduct to produce such a result. As this Court has noted, the defendant's "attempt" in attempted murder "must be to effect the proscribed **result** and not merely to engage in proscribed conduct." *Smith v. State*, 459 N.E.2d 355, 358 (Ind. 1984) (emphasis added). *See also Ramsey v. State*, 723 N.E.2d 869, 871 (Ind. 2000) (same).

These alternative readings of our attempted-murder statute reveal equally legitimate ways of thinking about the statute's unit of prosecution: either by conduct or by result. And when a statute permits more than one reasonable interpretation, we consider that statute ambiguous. *Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016). So, under our test, unless the facts show that Powell's multiple gunshots amounted to distinguishable offenses, we conclude that the statute permits the prosecution for only a single criminal offense. *See Duncan*, 274 Ind. at 464, 412 N.E.2d at 775–76 (applying rule of lenity).

## B. Powell's criminal acts indicate two distinguishable offenses.

This step of our analysis requires us to decide whether Powell's criminal acts amount to a single offense or whether they indicate several

distinguishable offenses. To answer this question, we look to whether those acts are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker*, 932 N.E.2d at 735.

### 1. Pitfalls in the Analytical Framework

We pause first to consider the "elusive nature of attempting to define precisely" when otherwise independent criminal acts "coalesce into a single offense." *Nunn v. State*, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998). *See also* Jeffrey M. Chemerinsky, Note, *Counting Offenses*, 58 Duke L.J. 709, 726–28 (2009) (outlining the flaws in this approach). To be sure, there may be some cases in which—intuitively, at least—the question is an easy one. *See Nunn*, 695 N.E.2d at 125 (rejecting the idea that a defendant, having fully discharged an automatic weapon with a fifty-round clip in "one burst," could be charged with and convicted of fifty attempted murders of a single person). But, at the end of the day, there's really "no way to make sense out of the notion that a course of conduct is 'really' only one act, rather than two or three, or, indeed, as many as one likes." Westen & Drubel, *Toward a General Theory of Double Jeopardy*, *supra*, at 114.

Still, this analytical step is a necessary one. In Indiana, two or more criminal offenses "may be joined in the same indictment or information," whether those offenses "are of the same or similar character, even if **not part of a single scheme or plan**," or whether they're "based on the same conduct or on a **series of acts connected together or constituting parts of a single scheme or plan**." I.C. § 35-34-1-9(a) (emphasis added). Despite the lack of mandatory joinder under our criminal code, when "two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they **should** be joined for trial," otherwise the prosecutor risks having those charges dismissed on subsequent prosecution. *Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002) (quoting *State v. Wiggins*, 661 N.E.2d 878, 880 (Ind. Ct. App. 1996)). *See* I.C. § 35-34-1-10(c) (permitting a "defendant who has been tried for one (1) offense" to "move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses").

Importantly, while this statutory framework may incentivize the joinder of criminal offenses in a single trial, the prosecutor's decision to proceed that way "does not prove that [the defendant's] criminal actions arose out of a single episode of criminal conduct." *Slone v. State*, 11 N.E.3d 969, 973 (Ind. Ct. App. 2014). Hence, the need for our analysis of the facts.

Of course, the legislature is free to define whether a single statutory offense will "subsist for a definite period or cover successive, similar occurrences." *Hines*, 30 N.E.3d at 1220. *See supra*, n.6. And when it does, we simply follow that guidance and our analysis is complete. But without such direction, we've long been reluctant to permit the fragmentation of a single offense into multiple crimes. *See Jackson v. State*, 14 Ind. 327, 328 (1860) ("The state cannot split up one crime and prosecute it in parts."); *Snodgrass v. State*, 273 Ind. 148, 150, 406 N.E.2d 641, 643 (1980) (acknowledging the same principle).

With these qualifications in mind, we proceed to our analysis of the facts and circumstances here.

### 2. The Analytical Framework Applied

According to the State, each pull of Powell's trigger amounted to "separate acts" designed to kill each person in Travis's car. Appellee's Br. at 22. And the fact that Powell "unleashed his violence at multiple people close in time and space," the State insists, "does not make it a single crime." Reply in Support of Trans. at 4. We disagree. Although Powell stands convicted of only two attempted murders (one for each victim), under the State's theory, he could have faced "five or six" counts of attempted murder for **each** victim (one for each shot fired), potentially culminating in a 480-year sentence upon conviction of all twelve counts. *See* I.C. § 35-50-2-4(b) (2014) (specifying a maximum sentence of forty years for conviction of a Level 1 felony).[13] For good reason, our courts

---

[13] The absurdity of such a scenario comes into even sharper relief when we consider the fact that, had he managed to kill his intended victims, Powell would have faced a maximum term-of-years sentence of only 130 years in prison. *See* I.C. § 35-50-2-3(a).

have rejected such a theory. *See Nunn*, 695 N.E.2d at 125. *See also Benson v. State*, 73 N.E.3d 198, 203 (Ind. Ct. App. 2017) (holding that, where the defendant shot at an officer twice during a continuous ninety-second pursuit, the State could charge only a single count of attempted murder, not two).

Space and time, however, aren't the only elements we factor into our analysis. For multiple criminal acts to be continuous and indistinguishable, Powell must also have committed those acts with a "singleness of purpose." *See Walker*, 932 N.E.2d at 735. So long as there's sufficient evidence he possessed the requisite *mens rea* to kill both victims by firing his weapon multiple times, both convictions may stand.[14] *See O'Connell v. State*, 742 N.E.2d 943, 950 (Ind. 2001) (finding evidence that defendant, during a single transaction, fired two successive shots at two victims standing side-by-side sufficient to prove that he "harbored the specific intent to kill [them] both").

Powell insists that the evidence supports only his conviction for the attempted murder of Travis. Because Travis was the only person with whom he had a beef, and because he had never met Davyn, Powell contends that his conviction for the attempted murder of Davyn lacks sufficient evidentiary support. Davyn, he insists, was simply an unfortunate bystander—an inadvertent victim caught in the line of fire. We disagree with Powell's characterization of facts and circumstances surrounding his commission of the crimes.

Having learned of the impending confrontation over the Taurus, Powell drove to Howard's house and stopped his car parallel to the black Cadillac parked just outside. With his window adjacent to that of Davyn's, and with Davyn in plain sight, Powell asked his presumptive nemeses whether they "had a problem" with Howard. Tr. Vol. II, p. 99. As the animosity crescendoed, Powell loaded his gun, aimed it toward the

---

[14] When there's more than one victim, the element of intent is critical to our analysis. Otherwise we risk either over-punishment (where the defendant intended to harm only one victim) or under-punishment (where the defendant intended to harm each victim).

occupied vehicle, and discharged five to six shots. Two of these shots struck Davyn, nearly killing her. This evidence—the animosity between the parties, Powell's confrontational demeanor, and his firing of multiple shots at an occupied vehicle—is sufficient to prove beyond a reasonable doubt that Powell fired his weapon multiple times with the dual purpose of intentionally killing both Travis and Davyn.[15] *See Perez v. State*, 872 N.E.2d 208, 214 (Ind. Ct. App. 2007) (holding that evidence of defendant firing multiple shots into a car occupied by several passengers, along with evidence of "an ongoing altercation" between the parties, was sufficient to prove attempted murder). *See also Simmons v. State*, 999 N.E.2d 1005, 1008, 1010–11 (Ind. Ct. App. 2013) (holding that defendant's knowledge of several police officers in the direction in which he fired a "barrage" of gunfire was sufficient to support multiple attempted-murder convictions).

To be sure, this Court has cited the "drive-by shooting" as "the paradigm problematic attempted murder case." *Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind. 1998). In those situations, it's "often unclear whether the defendant intended to murder or to batter, whether he knew of a high probability of death or a touching, or whether he simply recklessly disregarded either." *Id.* But this isn't a case in which the defendant fired blindly into a group of individuals. To the contrary, Powell directly engaged with his victims, both of whom sat facing him, only feet away, through an open car window. And as the conversation grew heated, Powell—with calculated deliberation—drew his weapon, loaded it, and fired at the car as it began pulling away—all without reciprocal provocation of violence.

Nor is this a case, as Powell insists, in which a defendant, "while intending to kill one person, mistakenly kills another through

---

[15] Because of the "stringent penalties for attempted murder," and because of the difficulty often involved in proving this offense, we construe the attempt statute as imposing a heightened *mens rea* to convict the defendant. *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015). Under this Court's *Spradlin* Rule, the State must prove beyond a reasonable doubt that the defendant committed the offense **intentionally**, not just knowingly or recklessly. *Richeson v. State*, 704 N.E.2d 1008, 1009–10 (Ind. 1998) (citing *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991)).

inadvertence, or bad aim." *See* Appellant's Br. at 15. In other words, Davyn did not simply "g[e]t in the way" as Powell shot at Travis. *See* Appellant's Resp. to Trans. at 8. Rather, Powell sprayed the side of the Cadillac, firing multiple shots at close range, fully aware of the vehicle's occupants. *See* Tr. Vol. III, pp. 88–92 (documenting the path of bullet holes along the side of the car). The prosecutor emphasized these facts in closing, urging the jury "to apply common sense and decide what [Powell] was thinking" when, knowing that Davyn and Travis were inside the car, he fired "indiscriminately" at them both.[16] *Id.* 230–31.

Based on this evidence and these arguments, along with the separate attempted-murder charges, the jury could have reasonably inferred that Powell intended to kill both Travis and Davyn. Indeed, if "intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury," then there's no issue with the jury inferring Powell's intent to kill Davyn and intent to kill Travis by directly "firing a gun in the[ir] direction." *See Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008).

## Conclusion

In sum, we hold that, while our attempted-murder statute contains no clear unit of prosecution, the multiple shots Powell fired—despite their proximity in space and time—amount to two chargeable offenses based on his dual purpose of intent to kill both Travis and Davyn. We thus affirm the trial court and order the reinstatement of Powell's attempted-murder conviction for Davyn.

Affirmed.

---

[16] Powell emphasizes the fact that he had never met Davyn, suggesting that he lacked the requisite intent to kill her. But Powell had never met Travis either. *See* Tr. Vol. II, pp. 130, 135. And Travis himself testified that he had no score to settle with Powell. *Id.*

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.


ATTORNEY FOR APPELLANT
Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana